## IN THE COMMON PLEAS COURT OF FRANKLIN COUNTY, OHIO

| | | |
|---|---|---|
| **Yenkin-Majestic Paint Corporation** | : | |
| **1920 Leonard Avenue** | : | |
| **Columbus, Ohio 43219,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **JURY DEMAND** |
| | : | **ENDORSED HEREON** |
| **Illinois Union Insurance Company** | : | |
| **d/b/a Chubb** | : | |
| **c/o Paul Bech, Esq.** | : | |
| **436 Walnut Street** | : | |
| **Philadelphia, Pennsylvania 19106-3703,** | : | |
| | : | |
| **Defendant.** | | |

## COMPLAINT

For its Complaint, Plaintiff Yenkin-Majestic Paint Corporation alleges:

## NATURE OF THE ACTION

1.     This lawsuit is necessary because an insurance company has refused the benefits that its customer paid for. Defendant Illinois Union Insurance Company—known as "Chubb"—issued a Premises Pollution Liability Insurance Policy to the Plaintiff, Yenkin-Majestic Paint Corporation. An explosion at Yenkin's resin manufacturing plant released significant amounts of hazardous chemicals. The Policy that Chubb issued covers certain pollution clean-up and related costs for precisely this scenario. Although Chubb has acknowledged coverage to an extent and paid for some cleanup costs, Chubb has refused to reimburse Yenkin for over $1 million in covered costs. Chubb's refusal to pay its customer the benefits owed has required Yenkin to file this lawsuit.

## PARTIES, JURISDICTION, AND VENUE

2.     Plaintiff The Yenkin-Majestic Paint Corporation, or simply "Yenkin," is a corporation organized in the state of Ohio with its principal place of business in Columbus, Ohio.

3.     Defendant Illinois Union Insurance Company is a corporation organized in the state of Illinois with its principal place of business in Philadelphia, Pennsylvania. Defendant does business under the trade name "Chubb," and so this Complaint refers to Defendant using that name.

4.     This Court has subject matter jurisdiction over this action because the amount in controversy exceeds the exclusive jurisdiction amounts of county and municipal courts.

5.     This Court has personal jurisdiction over Chubb because this action arises from Chubb's transacting business in Ohio, contracting to supply services in Ohio, and contracting to insure a person, property, or risk located within Ohio at the time of contracting.

6.     Venue is proper in this Court because Chubb conducted activity that gave rise to the claims for relief in Franklin County, all or some of the claim for relief arose in Franklin County, and because Yenkin has its principal place of business in Franklin County.

7.     Additionally, personal jurisdiction and venue are proper in this Court because Chubb has agreed by contract to submit itself to the jurisdiction of any court of competent jurisdiction upon Yenkin's request, and through the filing and service of this Complaint, Yenkin hereby requests Chubb submit itself to the jurisdiction of this Court.

**BACKGROUND FACTUAL ALLEGATIONS**

8.     Yenkin is a family-owned company previously engaged in an extensive paint, resin, and industrial coating manufacturing and sales business.

9.     Chubb issued a Premises Pollution Liability Insurance Policy to Yenkin for the policy period April 1, 2019 through April 1, 2022, Policy Number PPL G2488188A 003 (the "Policy"). Exhibit A to this Complaint is a true copy of the Policy.

10.     Chubb charged, and Yenkin paid, a premium of $73,584 for this Policy.

11. This was the third consecutive policy period for which Chubb had issued Yenkin and collected premiums from Yenkin for pollution liability coverage.

12. Shortly after midnight on April 8, 2021, an explosion and resulting fire occurred in Yenkin's resin plant building in Columbus (a covered location under the Policy).

13. Yenkin provided Chubb written notice of the resin plant explosion and fire the day it occurred.

14. The resin plant explosion and fire resulted in a "pollution condition" as defined in the Policy, because it resulted in the discharge, dispersal, release, escape, migration, or seepage of solid, liquid gaseous, or thermal irritants, contaminants, or pollutants on, in, into, or upon land and structures thereupon, the atmosphere, surface water, or groundwater.

15. As a result of the pollution condition caused by the explosion and fire, Yenkin incurred substantial "loss" as defined in the Policy, including without limitation "legal defense expense," "remediation costs," "first-party remediation costs," "emergency response costs," and "catastrophe management costs" as those terms are defined in the Policy.

16. Yenkin has provided Chubb with proper notice of all losses and has given Chubb sufficient claim information to show that Yenkin's losses are covered by the Policy.

17. Chubb has never sent an adjuster or other representative to the site to assess first-hand the pollution condition or any of the extensive clean-up efforts that resulted.

18. Yet, Chubb has denied the insurance coverage that Yenkin paid for.

19. For example, Chubb's denials include $580,415 in cleanup costs that Yenkin has incurred to remedy the pollution condition caused by the explosion and fire. When Yenkin submitted these costs to Chubb for reimbursement, Yenkin provided invoices and other descriptive information supporting the costs.

20.     Chubb's denial of coverage for these costs claimed that Yenkin had described the pollution condition as "ground contamination" instead of using the precise words "land, soil, surface water, or groundwater."

21.     But the word "ground" in ordinary usage would include land and soil.

22.     Moreover, the policy's expansive definition of "pollution condition" includes the release of pollutants "on, in, into, or upon" land and structures. No reasonable person could read the phrase "ground contamination" and conclude in good faith that it was not describing a "pollution condition" as defined in the Policy.

23.     The invoices and context Yenkin provided Chubb when it submitted the expenses only further demonstrated that these were covered losses under the Policy.

24.     As another example, Chubb has refused to reimburse Yenkin for $555,217.50 in fees Yenkin paid to Vorys Sater Seymour and Pease for pollution-related "legal defense expenses" as defined in the Policy. These fees were all reasonably incurred.

25.     On information and belief, Chubb (or other parent or affiliated entities of the specific "Chubb" insurer in this case) regularly selects or approves the selection of Vorys to represent its insureds, or maintains Vorys on lists of approved panel counsel for various types of insurance coverage.

26.     Chubb has tried to justify its refusal to pay these legal defense expenses because Chubb did not consent in advance to Yenkin's retention of Vorys to represent it relating to the explosion, fire, and resulting pollution condition.

27.     Section III.B of the Policy purports to give Chubb the right to select legal counsel to represent and assist Yenkin.

28. At no point after it received notice of the explosion and fire on April 8, 2021 did Chubb select legal counsel to represent and assist Yenkin, even though Chubb was regularly updated about the accident. Therefore, Yenkin had no choice but to secure its own counsel to advise it regarding the pollution cleanup. Yenkin's retention of Vorys was reasonable and did not prejudice Chubb.

29. The Policy does not unconditionally require Chubb's consent before an insured incurs covered legal defense expense.

30. Section V.CC of the policy defines legal defense expense as "reasonable legal costs, charges, and expenses, including expert charges, incurred by the 'insured'" in two scenarios:

    a. Section V.CC.1 specifies, "In the investigation, adjustment, or defense of 'claims[.]" Section V.CC.1 does not require advance consent by Chubb.

    b. Section V.CC.2 specifies, "Solely with respect to those instances where the 'insured' has secured the prior consent of the Insurer, *except in the event of a 'first-party claim' that results in 'emergency response costs'*, in order to clarify the extent of, minimize, and effect resolution of, any obligation to incur 'first party remediation costs'". (Emphasis added).

31. Thus, coverage for legal fees for the investigation, adjustment, or defense of claims does not require Chubb's prior consent.

32. The resin plant fire and explosion resulted in one or more "claims" as the Policy defines that term. At least some of the Vorys charges for which Chubb has refused coverage were incurred in the investigation, adjustment, or defense of claims.

33. Further, coverage for legal fees relating to first party remediation costs does not require Chubb's prior consent if the pollution condition involved a first party claim resulting in emergency response costs.

34. The resin plant explosion and fire caused a "first party claim" resulting in "emergency response costs" as the Policy defines those terms.

35. Accordingly, Yenkin did not need Chubb's prior consent to retain Vorys or incur attorney fees.

## COUNT ONE: BREACH OF CONTRACT

36. Yenkin incorporates the above allegations by reference as if fully restated here.

37. Yenkin has complied with all conditions precedent to Chubb's obligations to pay Yenkin for covered expenses under the Policy.

38. Chubb's refusal to pay certain expenses incurred by Yenkin is a breach of its obligations under the Policy.

39. Yenkin has suffered damage resulting from Chubb's breach of its obligations.

## COUNT TWO: BAD FAITH

40. Yenkin incorporates the above allegations by reference as if fully restated here.

41. Chubb's denial of coverage for certain expenses incurred by Yenkin lacks any reasonable basis and is arbitrary, capricious, and in bad faith.

42. Chubb's bad faith denial of coverage has caused Yenkin damage beyond uncovered losses, including attorney fees and expenses.

**WHEREFORE,** Yenkin requests judgment in its favor and against Chubb for compensatory damages in an amount to be determined at trial but exceeding $25,000, for punitive damages, for its costs, expenses, and attorney fees, for pre- and post-judgment interest, and for such other relief as the Court deems proper.

Respectfully submitted,

/s/ Barton R. Keyes

Rex H. Elliott                    (0054054)
rexe@cooperelliott.com
Barton R. Keyes              (0083979)
bartk@cooperelliott.com
Cooper Elliott
305 West Nationwide Boulevard
Columbus, Ohio 43215
(614) 481-6000
(614) 481-6001 Facsimile

Counsel for Plaintiff
Yenkin-Majestic Paint Corporation

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

/s/ Barton R. Keyes

Franklin County Ohio Clerk of Courts of the Common Pleas- 2024 Dec 31 1:30 PM-24CV009962

OH125 - A29

# EXHIBIT A

# CHUBB®

**Premises Pollution Liability Insurance Policy**

**Illinois Union Insurance Company**
**Chicago, Illinois**

### *Declarations*

**This Policy is issued by the stock insurance company identified above (hereinafter *the Insurer*).**

THIS POLICY PROVIDES LIABILITY COVERAGE ON A CLAIMS-MADE AND REPORTED BASIS, WHICH COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED TO THE INSURER, IN WRITING, DURING THE POLICY PERIOD OR WITHIN THIRTY DAYS THEREAFTER, UNLESS AN EXTENDED REPORTING PERIOD APPLIES. THIS POLICY ALSO PROVIDES FIRST-PARTY COVERAGES ON A DISCOVERED AND REPORTED BASIS, WHICH COVERS ONLY POLLUTION CONDITIONS AND INDOOR ENVIRONMENTAL CONDITIONS, AS APPLICABLE, FIRST DISCOVERED DURING THE POLICY PERIOD AND FOR WHICH A FIRST-PARTY CLAIM IS REPORTED TO THE INSURER, IN WRITING, DURING THE POLICY PERIOD OR WITHIN THIRTY DAYS THEREAFTER. FINALLY, THIS POLICY PROVIDES COVERAGE FOR EMERGENCY RESPONSE COSTS THAT IS LIMITED BY MORE SPECIFIC REPORTING CRITERIA AND COVERS ONLY EMERGENCY RESPONSE COSTS INCURRED, AND REPORTED TO THE INSURER, IN WRITING, WITHIN THE SPECIFIC TIMING REQUIREMENTS IDENTIFIED IN THIS POLICY. PLEASE READ THIS POLICY CAREFULLY. SOME OF THE PROVISIONS CONTAINED IN THIS POLICY RESTRICT COVERAGE, SPECIFY WHAT IS AND IS NOT COVERED AND DESIGNATE YOUR RIGHTS AND DUTIES. LEGAL DEFENSE EXPENSES ARE SUBJECT TO AND SHALL ERODE THE LIMITS OF LIABILITY AND ANY APPLICABLE SELF-INSURED RETENTION.

THE DECLARATIONS, TOGETHER WITH THE COMPLETED AND SIGNED APPLICATION, THIS POLICY, AND ANY ENDORSEMENTS OR SCHEDULES ATTACHED HERETO, CONSTITUTE THE INSURANCE POLICY.

| **Policy No.:** PPL G2488188A 003 | **Renewal of:** PPL G2488188A 002 |
|---|---|
| **Item 1.**     **First Named Insured:** Yenkin-Majestic Paint Corp. | |
|            **Address:**    1920 Leonard Avenue Columbus, Ohio 43219 | |

<u>**Coverages Purchased:**</u> **Coverage A. -** ☒    **Coverage B. -** ☒    **Coverage C. -** ☒
("X" Indicates Coverage Purchased)

| **Item 2.** | **Policy Period:** (Local Time of the Address Shown in Item 1., above.) | **Policy Inception Date:** 04/01/2019 12:01 A.M. | **Policy Expiration Date:** 04/01/2022 12:01 A.M. |
|---|---|---|---|
| **Item 3.** | **Limits of Liability:** In U.S. Dollars | **a.** $5,000,000 | Per Pollution Condition or Indoor Environmental Condition Limit of Liability |
| | | **b.** $5,000,000 | Total Policy and Program Aggregate Limit of Liability for all Pollution Conditions and Indoor Environmental Conditions |
| **Item 4.** | **Self-Insured Retention / Deductible Period:** In U.S. Dollars | **a.** $100,000 | Per Pollution Condition or Indoor Environmental Condition |
| | | **b.** 5 | Days Per Pollution Condition or Indoor Environmental Condition |

| Item 5. | Retroactive Dates: | |
|---|---|---|
| | | ☐ if checked  Exposure-Specific  Retroactive Dates are designated via endorsement. |
| | | **Coverage A**<br>Premises Pollution Condition Liability:  **FULL RETRO**<br>Premises Indoor Environmental Condition Liability:  **FULL RETRO**<br>Premises Pollution Condition First-Party Claims:  **FULL RETRO**<br>Premises Indoor Environmental Condition First-Party Claims:  **04/01/2019** |
| | | **Coverage B**<br>Transportation Liability:  **04/01/2009**<br>Transportation First-Party Claims:  **04/01/2009** |
| | | **Coverage C**<br>Non-Owned Disposal Sites Liability :  **FULL RETRO** |
| | | If **"FULL RETRO"** is indicated in the Retroactive Date column above, then retroactive coverage is afforded pursuant to this Policy for that specific exposure, subject to any other corresponding exposure-specific Retroactive Date added to this Policy by endorsement. |

| Item 6. | Premium:<br>In U.S. Dollars | $73,584 |
|---|---|---|
| | Total Premium: | $73,584<br><br>(The entire amount of this premium shall be **25%** minimum earned as of the first day of the Policy Period indicated in Item **2.**, above) |

| Item 7. | Producer:<br>Name & Address | Hylant Group Inc.<br>565 Metro Place South<br>Suite 450<br>Dublin, Ohio 43017 |
|---|---|---|

| Item 8. | a. Notice of Claim or Pollution Condition | b. All other Notices |
|---|---|---|
| **Notices** | CHUBB Environmental Risk Claims Manager<br>CHUBB USA Claims<br>P.O. Box 5103<br>Scranton, PA 18505-0510<br>Fax:  (866) 635-5687<br><br>First Notice Fax:  (800) 951-4119<br>First Notice Email:<br>CasualtyRiskEnvironmentalFirstNotice@chubb.com | Environmental Risk Underwriting Officer<br>CHUBB Environmental Risk<br>P.O. Box 1000<br>436 Walnut Street – WA 07A<br>Philadelphia,  PA 19106 |
| | **Environmental Incident Alert - 24 Hour Emergency Response Hotline** | **1-888-310-9553** |

| Item 9. | Covered Locations: | **As per PF- 44913 (09/14)** |
|---|---|---|
| | | **X**  if checked here, schedule of Covered Locations is designated via endorsement. |

**Policy Form No.**  PF-44887b (08/18) Premises Pollution Liability Insurance Policy

**Endorsements and Notices Attached at Policy Issuance:**

| Endorsement Number: | Form Number: | Form Name: |
|---|---|---|
| 001 | PF-44892 (09/14) | Schedule of Additional Insureds Endorsement |
| 002 | PF-32460 (11/10) | Schedule of Named Insured Endorsement |
| 003 | PF-48617 (01/17) | Covered Operations Coverage (Scheduled) Endorsement |
| 004 | PF-48624 (01/17) | Deletion Of Discovery (Premises Pollution And Indoor Environmental Conditions) Endorsement |
| 005 | PF-44941a (01/17) | Global Program Solutions (Indemnity Only Outside of United States) Endorsement |
| 006 | PF-48648 (01/17) | Non-Owned/Non-Operated Locations Coverage (Pollution Conditions Only) Endorsement |
| 007 | PF-44957 (09/14) | Notice of Cancellation Amendatory (Generic Time Frame) Endorsement |
| 008 | PF-44963 (09/14) | Other Insurance (Primary) Endorsement |
| 009 | PF-44967 (09/14) | Premium Earn-Out (Staggered - One Year - Acceleration) Endorsement |
| 010 | PF-44913 (09/14) | Schedule of Covered Locations Schedule Endorsement |
| 011 | PF-44922 (09/14) | Schedule Of Disclosed Conditions Endorsement |
| 012 | PF-44955a (01/17) | Schedule of Non-Owned Disposal Sites Endorsement |
| 013 | PF-48661 (01/17) | Specific Activities Exclusionary Endorsement |
| 014 | PF-48667 (01/17) | Transportation Amendatory (Beyond Boundaries Generally) Endorsement |
| 015 | SL-34255a (01/16) | Service of Suit Endorsement |
| 016 | ALL-21101 (11/06) | Trade Or Economic Sanctions Endorsement |
| 017 | LD-5S23j (03/14) | Signatures |
|  | SL-27484 (06/09) | Ohio Surplus Lines Notification |
|  | TRIA24 (01/15) | Policyholder Disclosure Notice of Terrorism Insurance Coverage |
|  | ALL-5W06 (07/95) | Policyholder Notice OH |
|  | ALL-20887a (03/16) | Chubb Producer Compensation Practices & Policies |
|  | ILP 001 01 04 | U. S. Treasury Department's Office of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders |

**IN WITNESS WHEREOF, the Insurer has caused this Policy to be countersigned by a duly authorized representative of the Insurer.**

**DATE:** _____04/01/2019_____          _____
                   MO/DAY/YR                             AUTHORIZED REPRESENTATIVE

JOHN J. LUPICA, President

Franklin County Ohio Clerk of Courts of the Common Pleas- 2024 Dec 31 3:30 PM-24CV009625
0H125 - A34



# Premises Pollution Liability
# Insurance Policy

**This Policy is issued by the stock insurance company identified in the Declarations (hereinafter *the Insurer*).**

**THIS POLICY PROVIDES LIABILITY COVERAGE ON A CLAIMS-MADE AND REPORTED BASIS, WHICH COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED TO THE INSURER, IN WRITING, DURING THE POLICY PERIOD OR WITHIN THIRTY DAYS THEREAFTER, UNLESS AN EXTENDED REPORTING PERIOD APPLIES. THIS POLICY ALSO PROVIDES FIRST-PARTY COVERAGES ON A DISCOVERED AND REPORTED BASIS, WHICH COVERS ONLY POLLUTION CONDITIONS AND INDOOR ENVIRONMENTAL CONDITIONS, AS APPLICABLE, FIRST DISCOVERED DURING THE POLICY PERIOD AND FOR WHICH A FIRST-PARTY CLAIM IS REPORTED TO THE INSURER, IN WRITING, DURING THE POLICY PERIOD OR WITHIN THIRTY DAYS THEREAFTER. FINALLY, THIS POLICY PROVIDES COVERAGE FOR EMERGENCY RESPONSE COSTS THAT IS LIMITED BY MORE SPECIFIC REPORTING CRITERIA AND COVERS ONLY EMERGENCY RESPONSE COSTS INCURRED, AND REPORTED TO THE INSURER, IN WRITING, WITHIN THE SPECIFIC TIMING REQUIREMENTS IDENTIFIED IN THIS POLICY. PLEASE READ THIS POLICY CAREFULLY. SOME OF THE PROVISIONS CONTAINED IN THIS POLICY RESTRICT COVERAGE, SPECIFY WHAT IS AND IS NOT COVERED AND DESIGNATE YOUR RIGHTS AND DUTIES. LEGAL DEFENSE EXPENSES ARE SUBJECT TO AND SHALL ERODE THE LIMITS OF LIABILITY AND ANY APPLICABLE SELF-INSURED RETENTION.**

Throughout this Policy the words the Insurer shall refer to the company providing this insurance. Other words and phrases that appear in quotation marks have special meanings and are defined in Section V., DEFINITIONS.

In consideration of the payment of the premium and in reliance upon all statements made in the Application to this Policy, including the information furnished in connection therewith, and subject to all terms, definitions, conditions, exclusions and limitations of this Policy, the Insurer agrees to provide insurance coverage to the "insured" as described herein.

## I. INSURING AGREEMENTS

Solely to the extent that the coverages below are identified on the Declarations to this Policy as being underwritten by the Insurer, the Insurer agrees to pay on behalf of the "insured" for "loss", in excess of the "self-insured retention" or deductible period (as applicable), resulting from:

**A.** POLLUTION CONDITIONS OR INDOOR ENVIRONMENTAL CONDITIONS COVERAGE (Coverage A.)

"Claims" and "first-party claims" arising out of: 1) a "pollution condition" on, at, under or migrating from a "covered location"; or 2) an "indoor environmental condition" at a "covered location", provided the "claim" is first made, or the "insured" first discovers such "pollution condition" or "indoor environmental condition", during the "policy period". Any such "claim" or "first-party claim" must be reported to the Insurer, in writing, during the "policy period" or within thirty (30) days after the expiration of the "policy period", or during any applicable "extended reporting period".

The coverage afforded pursuant to this Coverage **A.** only applies to "pollution conditions" or "indoor environmental conditions" that first commence, in their entirety, on or after the retroactive date identified in Item **5.** of the Declarations, if applicable, and prior to the expiration of the "policy period".

**B.** TRANSPORTATION COVERAGE (Coverage **B.**)

"Claims" and "first-party claims" arising out of a "pollution condition" resulting from "transportation", provided the "claim" is first made, or the "insured" first discovers such "pollution condition", during the "policy period". Any such "claim" or "first-party claim" must be reported to the Insurer, in writing, during the "policy period" or within thirty (30) days after the expiration of the "policy period", or during any applicable "extended reporting period".

The coverage afforded pursuant to this Coverage **B.** only applies to "pollution conditions" that first commence, in their entirety, on or after the retroactive date identified in Item **5.** of the Declarations, if applicable, and prior to the expiration of the "policy period".

**C.** NON-OWNED DISPOSAL SITE COVERAGE (Coverage **C.**)

"Claims" arising out of a "pollution condition" on, at, under or migrating from a "non-owned disposal site", provided the "claim" is first made during the "policy period". Any such "claim" must be reported to the Insurer,

in writing, during the "policy period" or within thirty (30) days after the expiration of the "policy period", or during any applicable "extended reporting period".

The coverage afforded pursuant to this Coverage **C.** only applies to "pollution conditions" that are attributable to a "named insured's" waste generated at a "covered location" and received at the "non-owned disposal site", in its entirety, on or after the retroactive date identified in Item **5.** of the Declarations, if applicable, and prior to the expiration of the "policy period".

## II. LIMITS OF LIABILITY AND SELF-INSURED RETENTION

**A.** It is expressly agreed that the Insurer's obligation to pay for any covered "loss" (exclusive of "business interruption loss") pursuant to this Policy shall attach to the Insurer only after the "first named insured" has paid, or has provided evidence to the Insurer that another "named insured" has paid, the full amount of the "self-insured retention" with respect to any covered "pollution condition" or "indoor environmental condition". Under no circumstances, including, but not limited to, an "insured's" insolvency and/or bankruptcy, shall the Insurer be liable to pay any amount within the "self-insured retention". In the event that the "first named insured" cannot provide satisfactory evidence that a "named insured" has paid the full amount of the "self-insured retention" with respect to any covered "pollution condition" or "indoor environmental condition", the "first named insured" shall remain responsible to pay the "self-insured retention" before the Insurer's payment obligation pursuant to this Policy shall attach with respect to coverage sought by any "insured".

Notwithstanding the foregoing, if the "insured" agrees with the Insurer to use "mediation" to successfully resolve any "claim" for which "legal defense expenses" have been incurred, then the "self-insured retention" applicable to the "pollution condition" or "indoor environmental condition" that corresponds to such "claim" shall be reduced by fifty percent (50%), subject to a maximum reduction in the "self-insured retention" of twenty-five thousand dollars ($25,000).

In addition to the foregoing, it is expressly agreed that the Insurer's obligation to pay for any covered "business interruption loss" pursuant to this Policy shall attach to the Insurer only after the relevant "insured" has also borne the full amount of the "business interruption loss" within the deductible period identified in Item **4.** of the Declarations to this Policy.

**B.** One "self-insured retention" shall apply to all "loss" (exclusive of "business interruption loss") arising out of the same, continuous, repeated, or related "pollution condition" or "indoor environmental condition". If the same, continuous, repeated, or related "pollution condition" or "indoor environmental condition" triggers coverage pursuant to multiple coverage parts, or otherwise involves multiple exposures that have been assigned exposure-specific "self-insured retention" amounts by endorsement to this Policy, the single largest of the associated "self-insured retention" amounts identified in: **1)** Item **4.** of the Declarations; **2)** any Supplemental Coverage added by endorsement to this Policy; or **3)** any exposure-specific "self-insured retention" endorsement identified as part of this Policy, shall apply to all "loss" and other covered exposures arising out of such "pollution condition" or "indoor environmental condition", except for any "catastrophe management costs" that are assigned an exposure-specific "self-insured retention" by endorsement to this Policy, if any (hereinafter Catastrophe Management-Specific SIR Obligation). Amounts within any such Catastrophe Management-Specific SIR Obligation shall be independent of, and shall not otherwise erode, the single largest "self-insured retention" applicable to all other covered exposures arising out of the same "pollution condition" or "indoor environmental condition" as contemplated herein.

**C.** One deductible period shall apply to all "business interruption loss" arising out of the same, continuous, repeated, or related "pollution condition" or "indoor environmental condition".

**D.** Subject to Subsections **E.** and **F.**, below, the most the Insurer shall pay for all "loss" arising out of the same, continuous, repeated, or related "pollution condition" or "indoor environmental condition" is the Per Pollution Condition or Indoor Environmental Condition Limit of Liability identified in Item **3.a.** of the Declarations to this Policy.

**E.** Subject to Subsection **D.**, above, and Subsection **F.**, below, **$250,000** shall be the maximum amount the Insurer shall pay for all "catastrophe management costs" arising out of all "pollution conditions" and "indoor environmental conditions".

**F.** Subject to Subsections **D.** and **E.**, above, the Total Policy and Program Aggregate Limit of Liability identified in Item **3.b.** of the Declarations shall be the maximum liability of the Insurer pursuant to this Policy with respect to all "loss".

**G.** If the Insurer or an affiliate has issued pollution liability coverage afforded on a discovered and reported basis or claims-made and reported basis consistent with coverage afforded pursuant to this Policy in one or more policy

periods, and a "pollution condition" or "indoor environmental condition" is first discovered and reported to the Insurer, or a "claim" is first made and reported to the Insurer with respect to a "pollution condition" or "indoor environmental condition", in accordance with the terms and conditions of this Policy, then:

1. Any continuous, repeated, or related "pollution condition" or "indoor environmental condition" that is subsequently reported to the Insurer during later policy periods shall be deemed to be one "pollution condition" or "indoor environmental condition" discovered during this "policy period"; and

2. All "claims" arising out of:

   a. The same, continuous, repeated, or related "pollution condition" or "indoor environmental condition" that was discovered during this "policy period"; or

   b. The same, continuous, repeated, or related "pollution condition" or "indoor environmental condition" that was the subject of a "claim" first made and reported in accordance with the terms and conditions of this Policy,

shall be deemed to have been first made and reported during this "policy period" and no other policy shall respond.

## III. DEFENSE AND SETTLEMENT

A. The Insurer shall have the right and, subject to the "self-insured retention" obligation, the duty to defend the "insured" against a "claim" to which this insurance applies. The Insurer shall have no duty to defend the "insured" against any "claim" to which this insurance does not apply. The Insurer's duty to defend the "insured" ends once the Limits of Liability are exhausted or are tendered into a court of applicable jurisdiction, or once the "insured" refuses a settlement offer as provided in Subsection **E.,** below.

B. The Insurer shall have the right to select legal counsel to: **1)** represent the "insured" for the investigation, adjustment, and defense of any "claims" covered pursuant to this Policy; and **2)** assist the "insured" with clarifying the extent of, and to help minimize, any "first-party remediation costs". Selection of legal counsel by the Insurer shall not be done without the consent of the "insured"; such consent shall not be unreasonably withheld.

In the event the "insured" is entitled by law to select independent counsel to defend itself at the Insurer's expense, the attorney fees and all other litigation expenses the Insurer shall pay to that counsel are limited to the rates the Insurer actually pays to counsel that the Insurer normally retains in the ordinary course of business when defending "claims" or lawsuits of similar complexity in the jurisdiction where the "claim" arose or is being defended. In addition, the "insured" and the Insurer agree that the Insurer may exercise the right to require that such counsel: **1)** have certain minimum qualifications with respect to their competency, including experience in defending "claims" similar to those being asserted against the "insured"; **2)** maintain suitable errors and omissions insurance coverage; **3)** be located within a reasonable proximity to the jurisdiction of the "claim"; and **4)** agree in writing to respond in a timely manner to the Insurer's requests for information regarding the "claim". The "insured" may at any time, by its signed consent, freely and fully waive its right to select independent counsel.

C. The "insured" shall have the right and the duty to retain a qualified environmental consultant or "catastrophe management firm" to: **1)** perform any investigation and/or remediation of any "pollution condition" or "indoor environmental condition" covered pursuant to this Policy; or **2)** perform "catastrophe management services" covered pursuant to this Policy, respectively. The "insured" must receive the consent of the Insurer prior to the selection and retention of such consultant or "catastrophe management firm", except in the event of a "first-party claim" that results in "emergency response costs".

D. "Legal defense expenses" reduce the Limits of Liability identified in the Declarations to this Policy, and, unless specifically stated otherwise herein, any applicable Limits or Sublimits of Liability identified in any endorsement hereto. "Legal defense expenses" shall also be applied to the "self-insured retention".

E. The Insurer shall present all settlement offers to the "insured". If the Insurer recommends a settlement which is acceptable to a claimant, exceeds any applicable "self-insured retention", is within the Limits of Liability, and does not impose any additional unreasonable burdens on the "insured", and the "insured" refuses to consent to such settlement offer, then the Insurer's duty to defend shall end. Thereafter, the "insured" shall defend such "claim" independently and at the "insured's" own expense. The Insurer's liability shall not exceed the amount for which the "claim" could have been settled if the Insurer's recommendation had been accepted, exclusive of the "self-insured retention".

## IV. COVERAGE TERRITORY

The coverage afforded pursuant to this Policy shall only apply to "pollution conditions" or "indoor environmental conditions" located, and "claims" made, within the United States of America.

## V. DEFINITIONS

**A.** **"Additional insured"** means any person or entity specifically endorsed onto this Policy as an "additional insured", if any. Such "additional insured" shall maintain only those rights that are specified by endorsement to this Policy.

**B.** **"Adverse media coverage"** means national or regional news exposure in television, radio, print or internet media that is reasonably likely to have a negative impact on the "insured" with respect to its income, reputation, community relations, public confidence or good will.

**C.** **"Bodily injury"** means physical injury, illness, disease, mental anguish, emotional distress, or shock, sustained by any person, including death resulting therefrom, and any prospective medical monitoring costs that are intended to confirm any such physical injury, illness or disease.

**D.** **"Business income"** means:

   **1.** Net profit or loss, before income taxes, including "rental income" from tenants, that would have been realized had there been no "business interruption";

   **2.** The "insured's" continuing operating and payroll expense (excluding payroll expense of officers, executives, department managers and contract employees);

   **3.** Costs incurred by the "insured" as rent for temporary premises when a portion of a "covered location" becomes untenantable due to a "pollution condition" or "indoor environmental condition" and temporary premises are required to continue the "insured's" operations. Such rental costs cannot exceed the fair rental value of the untenantable portion of the "covered location" immediately preceding the "pollution condition" or "indoor environmental condition".

**E.** **"Business interruption"** means the necessary partial or complete suspension of the "insured's" operations at a "covered location" for a period of time, which is directly attributable to a "pollution condition" or "indoor environmental condition" to which Coverage **A.** of this Policy applies. Such period of time shall extend from the date that the operations are necessarily suspended and end when such "pollution condition" or "indoor environmental condition" has been remediated to the point at which the "insured's" normal operations could reasonably be restored.

**F.** **"Business interruption loss"** means:

   **1.** "Business income";

   **2.** "Extra expense"; and

   **3.** "Delay expense".

**G.** **"Catastrophe management costs"** means reasonable and necessary expenses approved by the Insurer, in writing, except for those expenses incurred during the same seven (7) day period associated with "emergency response costs", which have been incurred by the "insured" for the following:

   **1.** Responsive consulting services rendered by a "catastrophe management firm";

   **2.** Printing, advertising, mailing of materials of public relations materials;

   **3.** Travel by directors, officers, employees or agents of the "insured", or the "catastrophe management firm", incurred at the direction of a "catastrophe management firm";

   **4.** To secure the scene of a "pollution condition" or "indoor environmental condition"; or

   **5.** Sums advanced to third-parties directly harmed by the "pollution condition" or "indoor environmental condition" for their medical costs; funeral costs; psychological counseling; travel expenses costs; temporary living costs or other necessary response costs,

   but solely in those instances when, in the good faith opinion of a "key executive", the associated "pollution condition" or "indoor environmental condition" has resulted in or is reasonably likely to result in: **a)** "loss" (exclusive of "catastrophe management costs") that will exceed the applicable "self-insured retention"; and **b)** a need for "catastrophe management services" due to "adverse media coverage".

   **"Catastrophe management costs"** do not include any "legal defense expense".

**H.** **"Catastrophe management firm"** means any firm that is approved, in writing, except for firms retained for the same seven (7) day period associated with "emergency response costs", by the Insurer to perform "catastrophe management services" in connection with a "pollution condition" or "indoor environmental condition".

I. **"Catastrophe management services"** means advising the "insured" with respect to minimizing potential harm to the "insured" from a covered "pollution condition" or "indoor environmental condition" by managing "adverse media coverage" and maintaining and restoring public confidence in the "insured", and its services or products.

J. **"Claim"** means the written assertion of a legal right received by the "insured" from a third-party, or from another "insured" that is party to an "environmental indemnity obligation", including, but not limited to, a "government action", suits or other actions alleging responsibility or liability on the part of the "insured" for "bodily injury", "property damage" or "remediation costs" arising out of "pollution conditions" or "indoor environmental conditions" to which this insurance applies.

K. **"Covered location"** means:

1. Any location specifically identified in Item **9.** of the Declarations to this Policy;

2. Any location that is specifically identified on a Schedule of Covered Locations attached to this Policy; and

3. Any location that meets the prerequisites to coverage identified in the Automatic Acquisition and Due Diligence Endorsement attached to this Policy, if any.

L. **"Delay expense"** means, for a "covered location" under development where a "pollution condition" or "indoor environmental condition" causes a delay in the completion or development during the "business interruption", any of the following expenses:

1. Additional interest on money the "insured" has borrowed to finance the construction, development, or remediation of a project at a "covered location";

2. Additional realty taxes and other assessments;

3. Additional advertising or promotional expense;

4. Additional expenses incurred resulting from the renegotiation of leases, including associated usual and customary legal representation expense; and

5. Additional engineering, architectural, and consulting fees.

M. **"Emergency response costs"** means "first-party remediation costs" incurred within seven (7) days following the discovery of a "pollution condition" or "indoor environmental condition" by a "responsible person" in order to abate or respond to an imminent and substantial threat to human health or the environment arising out of:

1. A "pollution condition" or "indoor environmental condition" on, at, under or migrating from a "covered location"; or

2. A "pollution condition" resulting from "transportation",

provided such "emergency response costs" are reported to the Insurer within fourteen (14) days of when that "responsible person" first became aware of such "pollution condition" or "indoor environmental condition".

N. **"Environmental indemnity obligations"** means an "insured's" obligations to defend or indemnify a third-party with respect to a "pollution condition" or "indoor environmental condition" to which this insurance otherwise applies, provided that such defense or indemnity obligation is explicitly included within a contract identified or described on the Schedule of Insured Contracts Endorsement attached to this Policy, if any.

O. **"Environmental law"** means any Federal, state, commonwealth, municipal or other local law, statute, ordinance, rule, guidance document, regulation, and all amendments thereto (collectively Laws), including voluntary cleanup or risk-based corrective action guidance, or the direction of an "environmental professional" acting pursuant to the authority provided by any such Laws, along with any governmental, judicial or administrative order or directive, governing the liability or responsibilities of the "insured" with respect to a "pollution condition" or "indoor environmental condition".

P. **"Environmental professional"** means a licensed professional that is:

1. Mutually agreed upon by the Insurer and the "insured", except with respect to "emergency response costs"; and

2. Qualified by licensure, knowledge, skill, education and training to perform an assessment, prepare an investigation protocol, interpret the results and prepare a scope of work to remediate a "pollution condition" or "indoor environmental condition".

**Q.** **"Extended reporting period"** means the additional period of time in which to report a "claim" first made against the "insured" during or subsequent to the end of the "policy period".

**R.** **"Extra damages"** means punitive, exemplary or multiplied damages, and civil fines, penalties and assessments, but solely to the extent that the punitive, exemplary or multiplied damages, and civil fines, penalties and assessments:

**1.** Are insurable under applicable law; and

**2.** Arise out of a "pollution condition" or "indoor environmental condition" that results in "bodily injury", "property damage", "remediation costs" or "first-party remediation costs" to which this insurance otherwise applies.

**S.** **"Extra expense"** means costs incurred by the "insured" due to a "pollution condition" or "indoor environmental condition" that are necessary to avoid or mitigate any "business interruption". Such costs must be incurred to actually minimize the amount of foregone "business income" that would otherwise be covered pursuant to this Policy.

**T.** **"First named insured"** means the person or entity as identified in Item **1.** of the Declarations to this Policy. The "first named insured" is the party responsible for the payment of any premiums and the payment of, or evidencing payment of, any applicable "self-insured retention" amounts. The "first named insured" shall also serve as the sole agent on behalf of all "insureds" with respect to the provision and receipt of notices, including notice of cancellation or non-renewal, receipt and acceptance of any endorsements or any other changes to this Policy, return of any premium, assignment of any interest pursuant to this Policy, as well as the exercise of any applicable "extended reporting period", unless any such responsibilities are otherwise designated by endorsement.

**U.** **"First-party claim"** means the first-party discovery of a "pollution condition" or an "indoor environmental condition" during the "policy period" by an "insured" to which this insurance applies.

**V.** **"First-party remediation costs"** means reasonable and necessary "remediation costs" incurred by an "insured" resulting from a "first-party claim". If no applicable laws exist that govern the remediation, investigation, quantification, monitoring, removal, disposal, treatment, neutralization, or immobilization of such "pollution condition" or "indoor environmental condition" in the jurisdiction of the "covered location", necessary "remediation costs" may be established by securing the written professional recommendations of an "environmental professional".

**"First-party remediation costs"** also means reasonable and necessary expenses required to restore, repair or replace real or personal property to substantially the same condition it was in prior to being damaged during the course of responding to a "pollution condition" or "indoor environmental condition". Such expenses shall not include costs associated with betterments or improvements, except to the extent that such betterments or improvements are exclusively associated with the use of building materials which are environmentally superior to those materials which comprised the original damaged property. Any such environmentally superior material must be: **a)** certified as such by an applicable independent certifying institution, where such certification is available; or **b)** in the absence of any such certification, based solely on the judgment of the Insurer and at its sole discretion.

**W.** **"Fungi"** means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents, or byproducts produced or released by "fungi".

**X.** **"Government action"** means action taken or liability imposed by any Federal, state, commonwealth, municipal or other local government agency or body acting pursuant to the authority of "environmental law".

**Y.** **"Illicit abandonment"** means:

**1.** Solely with respect to coverage for "covered locations", the intentional placement or abandonment of any solid, liquid, gaseous or thermal irritant, contaminant, or pollutant, including contaminated soil, contaminated silt, contaminated sedimentation, smoke, soot, vapors, fumes, acids, alkalis, chemicals, hazardous substances, hazardous materials, or waste materials, including "low-level radioactive waste", "mixed waste" and medical, red bag, infectious and pathological wastes, on, at or into a "covered location", by a person or entity that:

**a.** Is not an "insured"; and

**b.** Is not affiliated by common ownership with an "insured", and,

2. Solely with respect to coverage for "transportation", the intentional placement or abandonment of any waste, goods, materials or product beyond the boundaries of a "covered location" during "transportation" by a person or entity that:

   **a.** Is not an "insured"; and

   **b.** Is not affiliated by common ownership with an "insured".

   **"Illicit abandonment"** does not mean any such placement or abandonment, above, which takes place, in whole or in part, prior to the inception date identified in Item **2.** of the Declarations of this Policy.

**Z.** **"Indoor environmental condition"** means:

1. The presence of "fungi" in a building or structure, or the ambient air within such building or structure; or

2. The discharge, dispersal, release, escape, migration or seepage of *legionella pneumophila* in a building or structure, or the ambient air within such building or structure,

   provided that such "fungi" or *legionella pneumophila* are not naturally occurring in the environment in the amounts and concentrations found within such building or structure.

**AA.** **"Insured"** means the "first named insured", any "named insured", any "additional insured", and any past or present director or officer of, partner in, employee of, temporary or leased worker of, or, with respect to a limited liability company, a member of, any of the foregoing while acting within the scope of his or her duties as such.

**BB.** **"Key executive"** means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel, general partner or managing partner (if the "insured" is a partnership), managing member (if the "insured" is a limited liability company) or sole proprietor (if the "insured" is a sole proprietorship) of the "insured". A "key executive" also means any other person holding a title designated by the "first named insured", approved by the Insurer, and identified by endorsement to this Policy.

**CC.** **"Legal defense expense"** means reasonable legal costs, charges, and expenses, including expert charges, incurred by the "insured":

1. In the investigation, adjustment or defense of "claims"; or,

2. Solely with respect to those instances where the "insured" has secured the prior consent of the Insurer, except in the event of a "first-party claim" that results in "emergency response costs", in order to clarify the extent of, minimize, and effect resolution of, any obligation to incur "first-party remediation costs".

**DD.** **"Loss"** means:

Coverage **A.**

1. A monetary judgment, award or settlement of compensatory damages arising from "bodily injury", "property damage" or "remediation costs", including associated "extra damages";

2. "Legal defense expense";

3. "First-party remediation costs";

4. "Emergency response costs";

5. "Business interruption loss"; and

6. "Catastrophe management costs".

Coverage **B.**

7. A monetary judgment, award or settlement of compensatory damages arising from "bodily injury", "property damage" or "remediation costs", including associated "extra damages";

8. "Legal defense expense";

9. "First-party remediation costs";

10. "Emergency response costs"; and

11. "Catastrophe management costs".

Coverage **C.**

12. A monetary judgment, award or settlement of compensatory damages arising from "bodily injury", "property damage" or "remediation costs", including associated "extra damages" and "legal defense expense"; and

**13.** "Catastrophe management costs".

<u>Supplemental Coverages</u>

Any other liability or first-party exposure insured pursuant to any Supplemental Coverage added by endorsement to this Policy.

**EE.** **"Low-level radioactive waste"** means waste that is radioactive but not classified as the following: high-level waste (spent nuclear fuel or the highly radioactive waste produced if spent fuel is reprocessed), uranium milling residues, and waste with greater than specified quantities of elements heavier than uranium.

**FF.** **"Mediation"** means a conciliatory, non-binding attempt to resolve a "claim" using a neutral, third-party facilitator.

**GG.** **"Mixed waste"** means waste containing both radioactive and hazardous components as defined pursuant to United States law within the Atomic Energy Act and the Resource Conservation and Recovery Act, as either may be amended.

**HH.** **"Named insured"** means the "first named insured" and any other person or entity specifically endorsed onto this Policy as a "named insured", if any. "Named insureds" shall maintain the same rights pursuant to this Policy as the "first named insured", except for those rights specifically: **1)** reserved to the "first named insured" as defined herein; or **2)** limited by endorsement to this Policy.

**II.** **"Natural resource damage"** means injury to, destruction of, or loss of, including the resulting loss of value of, fish, wildlife, biota, land, air, water, groundwater, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States of America (including the resources of the fishery conservation zone established by the Magnuson-Stevens Fishery Conservation and Management Act (16 U.S.C. § 1801 et. seq.)), any state, commonwealth or local government, or any Native American Tribe, or, if such resources are subject to a trust restriction on alienation, any members of any Native American Tribe, including the reasonable costs of assessing such injury, destruction or loss resulting therefrom.

**JJ.** **"Non-owned disposal site"** means:

**1.** Any treatment, storage, transfer, disposal or recycling site or facility located within the United States of America that has not at any time been owned or operated, in whole or in part, by any "insured", which receives, or has historically received, a "named insured's" waste for disposal; provided that such treatment, storage, transfer, disposal or recycling site or facility:

    **a.** Was properly permitted and licensed pursuant to "environmental law" to accept the "named insured's" waste at the time of such disposal by the Federal, state, commonwealth, municipal or other local government agencies or bodies with applicable jurisdiction;

    **b.** Was not owned or operated by any person, corporation or unincorporated association that was in bankruptcy at the time the "named insured's" waste was received for disposal; and

    **c.** Has not, prior to the time the "named insured's" waste was received for disposal, been identified on the United States EPA (CERCLA) National Priorities List or pursuant to any functional equivalent of that list made by Federal, state, commonwealth, municipal or other local government agency or body with applicable jurisdiction pursuant to "environmental law", or

**2.** Any treatment, storage, transfer, disposal or recycling site or facility specifically identified on a Schedule of Non-Owned Disposal Sites Endorsement attached to this Policy, if any.

**KK.** **"Policy period"** means:

**1.** The period of time specifically identified in Item **2.** of the Declarations to this Policy; or,

**2.** Solely with respect to "covered locations" added to this Policy during the period of time specifically identified in Item **2.** of the Declarations to the Policy, if any, the period of time following the effective date of such addition through the expiration date of the Policy identified in Item **2.** of the Declarations to this Policy; or

**3.** Any shorter period of time resulting from the cancellation of this Policy.

**LL.** **"Pollution condition"** means:

**1.** "Illicit abandonment"; or

**2.** The discharge, dispersal, release, escape, migration, or seepage of any solid, liquid, gaseous or thermal irritant, contaminant, or pollutant, including soil, silt, sedimentation, smoke, soot, vapors, fumes, acids, alkalis, chemicals, electromagnetic fields (EMFs), hazardous substances, hazardous materials, waste

materials, "low-level radioactive waste", "mixed waste" and medical, red bag, infectious or pathological wastes, on, in, into, or upon land and structures thereupon, the atmosphere, surface water, or groundwater.

**MM.** **"Property damage"** means:

**1.** Physical injury to, or destruction of, tangible property of a third-party, including all resulting loss of use of that property;

**2.** Loss of use of tangible property of a third-party, that is not physically injured or destroyed;

**3.** Diminished value of tangible property owned by a third-party; or

**4.** "Natural resource damages".

**"Property damage"** does not mean "remediation costs".

**NN.** **"Remediation costs"** means expenses incurred to investigate, quantify, monitor, remove, dispose, treat, neutralize, or immobilize "pollution conditions" or "indoor environmental conditions" to the extent required by "environmental law" in the jurisdiction of such "pollution conditions" or "indoor environmental conditions".

**OO.** **"Rental income"** means the actual rental fees lost as a result of a "suspension" of a rented "covered location".

**PP.** **"Responsible person"** means any employee of an "insured" responsible for environmental affairs, control, or compliance at a "covered location", or any "key executive" of, officer or director of, or partner in, an "insured".

**QQ.** **"Self-insured retention"** means the largest applicable dollar amount among triggered coverage parts identified in Item **4.** of the Declarations to this Policy, or as otherwise designated by endorsement to this Policy, if any.

**RR.** **"Suspension"** means that part of, or all of, a rented "covered location" is rendered untenantable for the purposes identified to the Insurer prior to the inception date of this Policy due to a "pollution condition" or "indoor environmental condition".

**SS.** **"Terrorism"** means activities against persons, organizations or property of any nature:

**1.** That involve the following or preparation for the following:

**a.** Use or threat of force or violence; or

**b.** Commission or threat of a dangerous act; or

**c.** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

**2.** When one or both of the following applies:

**a.** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

**b.** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**TT.** **"Transportation"** means the movement of an "insured's" waste, materials, goods or products to or from a "covered location" by automobile, aircraft, watercraft, railcar or other conveyance, including any associated loading or unloading thereof, by an "insured", or any third-party vendor engaged by an "insured" in the business of transporting property for hire, provided that any such movement, and associated loading and unloading activities, are performed beyond the boundaries of a "covered location".

**UU.** **"Underground storage tank"** means any tank and associated piping and appurtenances connected thereto which tank has more than ten percent (10%) of its volume below ground.

**"Underground storage tank"** does not mean:

**1.** Any flow-through process tank, including, but not limited to, a septic tank, oil/water separator, sump, or any stormwater or wastewater collection/treatment vessel or system; or

**2.** Any tank that is located below ground, provided that such tank is located on or above the floor of a basement of a building or on or above the floor of any shaft or tunnel.

**VV.** **"War"** means war, whether or not declared, civil war, martial law, insurrection, revolution, invasion, bombardment or any use of military force, usurped power or confiscation, nationalization or damage of property by any government, military or other authority.

## VI. EXCLUSIONS

This insurance shall not apply to:

### A. Asbestos

"Loss" arising out of or related to asbestos or asbestos-containing materials.

This exclusion shall not apply to:

1. Monetary judgments, awards or settlements of compensatory damages resulting from "bodily injury" or "property damage", or any associated "extra damages" or "legal defense expenses";

2. Monetary judgments, awards or settlements of compensatory damages resulting from "remediation costs", or any associated "extra damages" or "legal defense expense", arising out of asbestos or asbestos-containing materials discovered in soil or groundwater; and

3. "First-party remediation costs", "emergency response costs", "catastrophe management costs" or "business interruption loss", or any associated "legal defense expense", resulting from "first-party claims" arising out of asbestos or asbestos-containing materials discovered in soil or groundwater.

### B. Contractual Liability

"Loss" arising out of or related to liability of others assumed by any "insured" through contract or agreement, except if the liability would have attached to the "insured" in the absence of such contract or agreement.

This exclusion shall not apply to "environmental indemnity obligations".

### C. Criminal Fines and Criminal Penalties

"Loss" arising out of or related to criminal fines, criminal penalties or criminal assessments.

### D. Divested Property

"Loss" arising out of or related to a "pollution condition" on, at, under or migrating from, or "indoor environmental condition" at, any "covered location":

1. That had been sold, abandoned, or given away by any "insured", or was condemned (collectively hereinafter Divested), prior to the "policy period"; or

2. When such "pollution condition" or "indoor environmental condition" first commenced after the "covered location" had been Divested.

This exclusion shall not apply to any "pollution conditions" or "indoor environmental conditions" that first commenced, in whole or in part, prior to the effective date that any such "covered location" was Divested as identified on the Divested Properties Coverage Endorsement attached to this Policy, if any.

### E. Employers Liability

"Claims" arising out of or related to "bodily injury" to:

1. Any "insured" or any employee of its parent corporation, subsidiary or affiliate:

    a. Arising out of, or in the course of, employment by any "insured", its parent corporation, subsidiary or affiliate; or

    b. Performing duties related to the conduct of the business of any "insured", its parent corporation, subsidiary or affiliate.

2. The spouse, child, parent, brother or sister of any "insured" or employee of its parent corporation, subsidiary or affiliate as a consequence of Paragraph **1.,** above.

This exclusion applies:

1. Whether any "insured" may be liable as an employer or in any other capacity; and

2. To any obligation to share damages with or repay someone else who must pay damages because of such "bodily injury".

**F. First-Party Property Damage**

"Loss" arising out of or related to damage to real or personal property owned by, leased to, loaned to, or rented by any "insured", or otherwise in the care, custody, or control of any "insured".

This exclusion shall not apply to "first-party remediation costs", "emergency response costs", "business interruption loss" and "catastrophe management costs".

**G. Fraud or Misrepresentation**

"Loss" arising out of or related to:

1. Fraudulent acts or material misrepresentations on the part of the "first named insured" made:

   **a.** Within an Application to this Policy; or

   **b.** During the Application or underwriting process prior to the inception date of this Policy,

   which would have affected the Insurer's decision to either issue this Policy, or issue this Policy and its endorsements pursuant to the financial terms identified in the Declarations to this Policy; or

2. Fraudulent acts or material misrepresentations on the part of any "responsible person" during the "policy period".

**H. Insured's Internal Expenses**

"Loss" arising out of or related to expenses incurred by any "insured" for services performed by its salaried staff and any employees.

This exclusion shall not apply to:

1. "Emergency response costs", along with any associated "catastrophe management costs" incurred during that same seven (7) day period; or

2. Any other costs, charges or expenses incurred with the prior approval of the Insurer at its sole discretion.

**I. Insured vs. Insured**

"Claims" made by any "insured" against any other "insured".

This exclusion shall not apply to:

1. "Claims" initiated by third-parties, including cross claims, counterclaims or claims for contribution by such parties against any "insured"; or

2. "Claims" that arise out of an indemnification provided by one "insured" to another "insured" in an "environmental indemnity obligation".

**J. Intentional Non-Compliance**

"Loss" arising out of or related to the intentional disregard of, or knowing, willful, or deliberate non-compliance with, any law, statute, regulation, administrative complaint, notice of violation, notice letter, instruction of any governmental agency or body, or any executive, judicial or administrative order, by, or at the direction of, any "responsible person".

**K. Known Conditions**

"Loss" arising out of or related to "pollution conditions" or "indoor environmental conditions" in existence and reported to a "responsible person":

1. Prior to the "policy period"; or,

2. Solely with respect to "covered locations" added to this Policy during the period of time specifically identified in Item **2.** of the Declarations to the Policy, if any, prior to the effective date of coverage for such "covered location",

and not affirmatively disclosed to the Insurer in an Application or supplemental underwriting materials provided to the Insurer to secure coverage for such "covered location" pursuant to this Policy.

**L. Lead-Based Paint**

"Loss" arising out of or related to lead-based paint.

This exclusion shall not apply to:

1. Monetary judgments, awards or settlements of compensatory damages resulting from "bodily injury" or "property damage", or any associated "extra damages" or "legal defense expenses";

2. Monetary judgments, awards or settlements of compensatory damages resulting from "remediation costs" , or any associated "extra damages" or "legal defense expenses", arising out of lead-based paint discovered in soil or groundwater; and

3. "First-party remediation costs", "emergency response costs", "catastrophe management costs" or "business interruption loss", or any associated "legal defense expense", resulting from "first-party claims" arising out of lead-based paint discovered in soil or groundwater.

**M. Material Change in Risk**

"Loss" arising out of or related to a change in the use or operations at a "covered location" that materially increases the likelihood or severity of a "pollution condition", "indoor environmental condition", "claim" or "first-party claim" from the intended uses or operations identified:

1. By the "first named insured" for the Insurer in an Application or supplemental underwriting materials provided prior to the effective date of coverage for such "covered location", if any; or

2. Solely with respect to "covered locations" added to the Policy pursuant to an Automatic Acquisition and Due Diligence Endorsement attached to this Policy, if any, as part of the due diligence materials and supplemental underwriting materials provided to the Insurer as part of the notice required pursuant to that endorsement, if any.

This exclusion shall only apply to the "covered location" associated with the change in use or operations and shall not limit coverage for other "covered locations" to which this insurance applies.

**N. Non-Owned Disposal Sites**

"Loss" arising out of or related to "pollution conditions" on, at, under or migrating from any treatment, storage, disposal, transfer or recycling site or facility that is not a "non-owned disposal site".

**O. Underground Storage Tanks**

"Loss" arising out of or related to "pollution conditions" emanating from an "underground storage tank" located at a "covered location", when the existence of such "underground storage tank" was known to a "responsible person":

1. Prior to the "policy period"; or,

2. Solely with respect to "underground storage tanks" situated at "covered locations" added to this Policy during the "policy period", prior to the effective date of coverage for such "covered location".

This exclusion shall not apply to any "underground storage tank" that:

1. Is identified on the Schedule of Underground Storage Tanks Endorsement or Schedule of Covered Storage Tanks (Financial Responsibility) Endorsement attached to this Policy, if any; or

2. Has been removed or closed-in-place prior to the inception date of this Policy and such removal or closure was conducted in accordance with "environmental law".

**P. Vehicle Damage**

"Claims" or associated "legal defense expense" for "property damage" to any automobile, aircraft, watercraft, railcar or other conveyance utilized for "transportation".

**Q. War or Terrorism**

"Loss" arising out of or related to "pollution conditions" or "indoor environmental conditions" attributable, whether directly or indirectly, to any acts that involve, or that involve preparation for, "war" or "terrorism" regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

**R. Workers' Compensation**

"Loss" arising out of or related to any obligation of any "insured" pursuant to the Jones Act or any workers' compensation, unemployment compensation, or disability benefits law or related laws.

**VII. REPORTING AND COOPERATION**

A. Without limiting the specific requirements contained in any Insuring Agreement or any other exposure-specific reporting requirements contained within this Policy, the "insured" shall also see to it that the Insurer receives notice of any "claim" or "first-party claim", as soon as practicable, by one or more of the following:

    1. Provide written notice to the address, fax number, or email address identified in Item **8.a.** of the Declarations to this Policy; or

    2. Provide verbal or electronic notice utilizing the **Environmental Incident Alert 24-hour Emergency Response and Incident Reporting System** by calling the telephone number identified in Item **8.** of the Declarations to this Policy or by using the associated telephone web application, respectively.

Such notice should include reasonably detailed information as to:

    1. The identity of the "insured", including contact information for an appropriate person to contact regarding the handling of the "claim" or "first-party claim";

    2. The identity of the "covered location";

    3. The nature of the "claim" or "first-party claim"; and

    4. Any steps undertaken by the "insured" to respond to the "claim" or "first-party claim".

B. The "insured" must:

    1. As soon as practicable, send the Insurer copies of any demands, notices, summonses or legal papers received in connection with any "claim";

    2. Authorize the Insurer to obtain records and other information;

    3. Cooperate with the Insurer in the investigation, settlement or defense of the "claim";

    4. Assist the Insurer, upon the Insurer's request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of "loss" to which this Policy may apply; and

    5. Provide the Insurer with such information and cooperation as it may reasonably require.

C. No "insured" shall make or authorize an admission of liability or attempt to settle or otherwise dispose of any "claim", without the written consent of the Insurer. Nor shall any "insured" retain any consultants or "catastrophe management firms", or incur any "first-party remediation costs" or "catastrophe management costs" with respect to a "first-party claim", without the prior consent of the Insurer, except for "emergency response costs".

D. Upon the discovery of a "pollution condition" or "indoor environmental condition", the "insured" shall make every attempt to mitigate any loss and comply with applicable "environmental law". The Insurer shall have the right, but not the duty, to mitigate such "pollution conditions" or "indoor environmental condition" if, in the sole judgment of the Insurer, the "insured" fails to take reasonable steps to do so. In that event, any "remediation costs" or "catastrophe management costs" incurred by the Insurer shall be deemed incurred by the "insured", and shall be subject to the "self-insured retention" and Limits of Liability identified in the Declarations to this Policy.

For the purposes of fulfilling the notice requirements contained in the Insuring Agreements to this Policy, notice supplied pursuant to one or more of the verbal or electronic notice mechanisms specifically contemplated in Subsection **A.**, above, or on the Declarations, shall constitute written notice to the Insurer.

## VIII. EXTENDED REPORTING PERIOD

A. Provided the "first named insured" has not purchased any other insurance to replace this Policy, the "first named insured" shall be entitled to a basic "extended reporting period", and may purchase an optional supplemental "extended reporting period", following Cancellation, as described in Subsection **A.**, Paragraph **1.** of Section **IX.**, **GENERAL CONDITIONS**, or nonrenewal of this Policy, in accordance with the terms and conditions described in Subsections **B.** through **D.**, below.

B. "Extended reporting periods" shall not reinstate or increase any of the Limits of Liability. "Extended reporting periods" shall not extend the "policy period" or change the scope of coverage provided. A "claim" first made against an "insured" and reported to the Insurer within the basic "extended reporting period" or supplemental "extended reporting period", whichever is applicable, shall be deemed to have been made and reported on the last day of the "policy period". In addition, if an "insured" first discovers a "pollution condition" or "indoor environmental condition" during the "policy period" and reports such "first-party claim" to the Insurer within the basic "extended reporting period" or supplemental "extended reporting period", whichever is applicable, then

such "first-party claim" shall also be deemed to have been first discovered and reported on the last day of the "policy period".

**C.** The "first named insured" shall have a ninety (90) day basic "extended reporting period" without additional charge.

**D.** The "first named insured" shall also be entitled to purchase a supplemental "extended reporting period" of up to thirty-three (33) months for not more than two hundred percent (200%) of the full premium identified in Item **6.** of the Declarations to this Policy, and any additional premiums resulting from coverage added during the "policy period". Such supplemental "extended reporting period" starts when the basic "extended reporting period" ends. The Insurer shall issue an endorsement providing a supplemental "extended reporting period" provided that the "first named insured":

    **1.** Makes a written request, to the address identified in Item **8.b.** of the Declarations to this Policy, for such endorsement which the Insurer receives prior to the expiration of the "policy period"; and

    **2.** Pays the additional premium when due. If that additional premium is paid when due, the supplemental "extended reporting period" may not be cancelled, provided that all other terms and conditions of the Policy are met.

## IX. GENERAL CONDITIONS

### A. Cancellation

    **1.** This Policy may be cancelled only by the "first named insured", or through the "first named insured's" agent, by mailing to the Insurer at the address identified in Item **8.b.** of the Declarations to this Policy, written notice stating when such cancellation shall be effective.

    **2.** This Policy may be cancelled by the Insurer for the following reasons:

        **a.** Non-payment of premium; or

        **b.** Fraud or material misrepresentation on the part of any "insured",

    by mailing to the "first named insured" at the "first named insured's" last known address, written notice stating when, not less than sixty (60) days thereafter, fifteen (15) days if cancellation is for non-payment of any unpaid portion of the premium, such cancellation shall be effective. The mailing of notice shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall be the end of the "policy period".

    Subparagraph **2.b.,** herein, shall apply only to that "insured" that engages in the fraud or misrepresentation. This exception shall not apply to any "insured" that is a parent corporation, subsidiary, employer of, or otherwise affiliated by ownership with, such "insured".

    **3.** In the event of cancellation, the premium percentage identified in Item **6.** of the Declarations to this Policy shall be the minimum-earned premium upon the inception date of this Policy. Thereafter, the remaining unearned premium, if any, shall be deemed earned by the Insurer on a *pro rata* basis over the remainder of the "policy period". Any unearned premium amounts due the "first named insured" upon cancellation of this Policy shall be calculated on a *pro rata* basis and refunded within thirty (30) days of the effective date of cancellation.

### B. Inspection and Audit

To the extent of the "insured's" ability to provide such access, and with reasonable notice to the "insured", the Insurer shall be permitted, but not obligated, to inspect and sample the "covered locations". The "insured" shall have the concurrent right to collect split samples. Neither the Insurer's right to make inspections, the making of said inspections, nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the "insured" or others, to determine or warrant that such property or operations are safe or in compliance with "environmental law", or any other law.

The Insurer may examine and audit the "insured's" books and records during this "policy period" and extensions thereof and within three (3) years after the final termination of this Policy.

### C. Legal Action Against the Insurer

No person or organization other than an "insured" has a right pursuant to this Policy:

    **1.** To join the Insurer as a party or otherwise bring the Insurer into a suit against any "insured"; or

2. To sue the Insurer in connection with this insurance unless all of the Policy terms have been fully complied with.

A person or organization may sue the Insurer to recover after an agreed settlement or on a final judgment against an "insured". However, the Insurer shall not be liable for amounts that are not payable pursuant to the terms of this Policy or that are in excess of the applicable Limit of Liability. An agreed settlement means a settlement and release of liability signed by the Insurer, the "insured", and the claimant or the claimant's legal representative.

### D. Bankruptcy

The insolvency or bankruptcy of any "insured", or any "insured's" estate, shall not relieve the Insurer of its obligations pursuant to this Policy. However, any such insolvency or bankruptcy of the "insured", or the "insured's" estate, shall not relieve the "insured" of its "self-insured retention" or deductible period obligations pursuant to this Policy. This insurance shall not replace any other insurance to which this Policy is excess, nor shall this Policy drop down to be primary, in the event of the insolvency or bankruptcy of any underlying insurer.

### E. Subrogation

In the event of any payment pursuant to this Policy by the Insurer, the Insurer shall be subrogated to all of the rights of recovery against any person or organization, and the "insured" shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. All "insureds" shall do nothing to prejudice such rights. Any recovery as a result of subrogation proceedings arising pursuant to this Policy shall accrue first to the "insureds" to the extent of any payments in excess of the limit of coverage; then to the Insurer to the extent of its payment pursuant to the Policy; and then to the "insured" to the extent of the "self-insured retention". Expenses incurred in such subrogation proceedings shall be apportioned among the interested parties in the recovery in the proportion that each interested party's share in the recovery bears to the total recovery.

### F. Representations

By accepting this Policy, the "first named insured" agrees that:

1. The statements in the Declarations, schedules and endorsements to, and Application for, this Policy are accurate and complete;

2. Those statements and representations constitute warranties that the "first named insured" made to the Insurer; and

3. This Policy has been issued in reliance upon the "first named insured's" warranties.

### G. Separation of Insureds

Except with respect to the Limits of Liability, Cancellation condition **2.a.**, and any applicable exclusions, this Policy applies:

1. As if each "named insured" were the only "insured"; and

2. Separately to each "named insured" against whom a "claim" is made,

and any fraud, misrepresentation, breach of a condition or violation of any duty (hereinafter Breach) by an "insured" shall not prejudice coverage for any "named insured" pursuant to this Policy, provided that: **1)** such "named insured" did not participate in, know of or assist in such Breach; and **2)** such "named insured" is not a parent, subsidiary, partner, member, director, officer of, employer of or otherwise affiliated with, the "insured" that committed such Breach.

### H. Other Insurance

If other valid and collectible insurance is available to any "insured" covering "loss" also covered by this Policy, other than a policy that is specifically written to apply in excess of this Policy, the insurance afforded by this Policy shall apply in excess of and shall not contribute with such other insurance.

### I. Changes and Assignment

Notice to or knowledge possessed by any person shall not effect waiver or change in any part of this Policy or estop the Insurer from asserting any right pursuant to the terms of this Policy. The terms, definitions, conditions, exclusions and limitations of this Policy shall not be waived or changed, and no assignment of any interest in this Policy shall bind the Insurer, except as provided by endorsement and attached to this Policy.

### J. Headings

The descriptions in the headings and sub-headings of this Policy are inserted solely for convenience and do not constitute any part of the terms or conditions hereof.

**K. Consent**

Where the consent of the Insurer, or an "insured", is required pursuant to this Policy, such consent shall not be unreasonably withheld, delayed, conditioned, or denied.

# SCHEDULE OF ADDITIONAL INSUREDS ENDORSEMENT

| Named Insured<br>Yenkin-Majestic Paint Corp. | | | Endorsement Number<br>001 |
|---|---|---|---|
| Policy Symbol<br>PPL | Policy Number<br>G2488188A 003 | Policy Period<br>04/01/2019 to 04/01/2022 | Effective Date of Endorsement<br>04/01/2019 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

The persons or entities identified in the Schedule of Additional Insureds, below, are "additional insureds" pursuant to this Policy, but solely with respect to their vicarious liability arising out of any "named insured's" direct liability for a "pollution condition" on, at under or migrating from, or an "indoor environmental condition" at, a "covered location" to which this insurance applies

### Schedule of Additional Insureds

1. Bear Environmental
2. EnviroServe
3. K-Kom
4. Freehold Cartage

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

PF-44892 (09/14)                                                                 Page 1 of 1

Case: 3:26-cv-00002-GFVT-HAI Doc #: 13 Filed: 02/06/25 Page: 30 of 60 FRAZEV009612

# SCHEDULE OF NAMED INSUREDS ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| Yenkin-Majestic Paint Corp. | 002 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPL | G2488188A 003 | 04/01/2019 to 04/01/2022 | 04/01/2019 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

The persons or entities identified in the Schedule of Named Insureds, below, are "named insureds" pursuant to this Policy.

### Schedule of Named Insureds

1. Wye Co., LP
2. Perry Logan Group, LLC
3. Wye Transportation Corp.
4. Fifth Leonard Company, LP
5. OPC Polymers
6. Fifth Woodland, LLC

All other terms and conditions of this Policy remain unchanged.

_____

Authorized Representative

PF-32460 (11/10)                                                                                           Page 1 of 1

## COVERED OPERATIONS COVERAGE (SCHEDULED) ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| Yenkin-Majestic Paint Corp. | 003 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPL | G2488188A 003 | 04/01/2019 to 04/01/2022 | 04/01/2019 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insureds" and the Insurer hereby agree to the following changes to this Policy:

I.  Section **I., INSURING AGREEMENTS**, of this Policy is hereby amended by addition of the following:

SUPPLEMENTAL COVERAGE - COVERED OPERATIONS

"Claims" and "first-party claims" arising out of a "pollution condition" or "indoor environmental condition" resulting from "covered operations", provided the "claim" is first made, or the "insured" first discovers such "pollution condition" or "indoor environmental condition", during the "policy period". Any such "claim" or "first-party claim" must be reported to the Insurer, in writing, during the "policy period" or within thirty (30) days after the expiration of the "policy period", or during any applicable "extended reporting period".

The coverage afforded pursuant to this Supplemental Coverage shall only apply to "pollution conditions" or "indoor environmental conditions" that first commence, in their entirety, on or after the Retroactive Date identified below and prior to the expiration of the "policy period".

Retroactive Date:  **08/09/2016**

II.  Solely with respect to the coverage afforded pursuant to this Supplemental Coverage, the following additional provisions apply:

### Limits of Liability and Self-Insured Retention

**Per Operations Condition Sublimit of Liability: $** 5,000,000

**Aggregate Operations Conditions Sublimit of Liability:  $** 5,000,000

The amount that the Insurer shall pay pursuant to this Policy for "loss" for coverage afforded pursuant to this Endorsement shall be subject to the Per Operations Condition Sublimit of Liability and Aggregate Operations Conditions Sublimit of Liability identified above. Therefore, the Per Operations Condition Sublimit of Liability, above, shall be the maximum amount the Insurer shall pay for all "loss" arising out of or related to the same, continuous, repeated, or related "pollution condition" or "indoor environmental condition" resulting from "covered operations" to which this insurance applies. Moreover, the Aggregate Operations Conditions Sublimit of Liability, above, shall be the maximum amount the Insurer shall pay for all "loss" arising out of or related to all "pollution conditions" and "indoor environmental conditions" resulting from "covered operations" to which this insurance applies. These Sublimits of Liability are subject to, and payments made within these Sublimits of Liability shall erode, the Limits of Liability identified in Item **3.** of the Declarations to this Policy, along with any other applicable exposure-specific Limits or Sublimits of Liability added by endorsement hereto. Under no circumstance shall the Insurer be liable to pay any amount in excess of any applicable Limit or Sublimit of Liability.

**Per Operations Condition Self-insured Retention: $** 100,000

Notwithstanding anything identified in Item **4.** of the Declarations to this Policy that might be construed to the contrary, the Per Operations Condition Self-Insured Retention, above, shall be the "self-insured retention" applicable to any coverage provided pursuant to this Policy for each "pollution condition" or "indoor environmental condition" resulting from "covered operations" to which this insurance applies.

**III.** Section **V., DEFINITIONS,** of this Policy is hereby amended by addition of the following:

"**Covered operations**" means the following scheduled services performed by or on behalf of a "named insured" outside of the physical boundaries of a "covered location".

**1.** Railcar transloading performed by the "named insured" at the "covered location" of 1920 Leonard Avenue, Columbus, OH 43219

"**Covered operations**" does not mean "transportation".

**IV.** Solely with respect to the coverage afforded pursuant to this Supplemental Coverage, Section **V., DEFINITIONS,** Subsections **M.** and **DD.,** of this Policy are hereby deleted in their entirety and replaced with the following:

**M. "Emergency response costs"** means "first-party remediation costs" incurred within seven (7) days following the discovery of a "pollution condition" or "indoor environmental condition" by a "responsible person" in order to abate or respond to an imminent and substantial threat to human health or the environment arising out of:

**1.** A "pollution condition" or "indoor environmental condition" on, at, under or migrating from a "covered location";

**2.** A "pollution condition" or "indoor environmental condition" resulting from "covered operations"; or

**3.** A "pollution condition" resulting from "transportation",

provided such "emergency response costs" are reported to the Insurer within fourteen (14) days of when that "responsible person" first became aware of such "pollution condition" or "indoor environmental condition".

**DD. Loss"** means:

**1.** A monetary judgment, award or settlement of compensatory damages arising from "bodily injury", "property damage" or "remediation costs", including associated "extra damages" and "legal defense expense";

**2.** "Emergency response costs" and associated "legal defense expense"; and

**3.** "Catastrophe management costs".

**V.** Solely with respect to the coverage afforded pursuant to this Supplemental Coverage, Section **VI., EXCLUSIONS,** Subsection **M., Material Change in Risk,** of this Policy is hereby deleted in its entirety and replaced with the following:

**M. Material Change in Risk**

"Loss" arising out of or related to a change in "covered operations" that materially increases the likelihood or severity of a "pollution condition", "indoor environmental condition", "claim" or "first-party claim" from the operations identified by the "first named insured" for the Insurer an Application or supplemental underwriting materials provided prior to the effective date of coverage for such "covered operations", if any.

This exclusion shall only apply to the changed operations and shall not limit coverage for other "covered operations" to which this insurance applies.

**VI.** <u>Solely with respect to the coverage afforded pursuant to this Supplemental Coverage,</u> Section **VI.,** **EXCLUSIONS**, of this Policy is hereby amended by addition of the following:

**Professional Liability**

"Loss" arising out of or related to the rendering of, or failure to render, professional services, including, but not limited to, recommendations, opinions, and strategies rendered for architectural, consulting, design and engineering work, such as drawings, designs, maps, reports, surveys, change orders, plan specifications, assessment work, remedy selection, site maintenance, equipment selection, and related construction management, supervisory, inspection or engineering services.

This exclusion shall not apply to "pollution conditions" or "indoor environmental conditions" that arise as a result of "covered operations" performed by or on behalf of a "named insured".

**VII.** Section **VII., REPORTING AND COOPERATION,** Subsection **A.,** Paragraph **2.,** of this Policy is hereby deleted in its entirety and replaced with the following:

**2.** The identity of the "covered location" or a detailed description of the "covered operations";

**VIII.** Section **IX., GENERAL CONDITIONS**, Subsection **A., Cancellation**, Paragraph **2.,** of this Policy is hereby amended by addition of the following:

**c.** Material change in the "covered operations" from the description identified in the Application to this Policy and supporting materials, which results in an increased likelihood of "claims", "first-party claims", "pollution conditions" or "indoor environmental conditions",

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

# DELETION OF DISCOVERY (PREMISES POLLUTION AND INDOOR ENVIRONMENTAL CONDITIONS) ENDORSEMENT

| Named Insured<br>Yenkin-Majestic Paint Corp. | | | Endorsement Number<br>004 |
|---|---|---|---|
| Policy Symbol<br>PPL | Policy Number<br>G2488188A 003 | Policy Period<br>04/01/2019 to 04/01/2022 | Effective Date of Endorsement<br>04/01/2019 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

**I.** Solely with respect to coverage afforded pursuant to Coverage **A.** of this Policy, Section **V.**, **DEFINITIONS**, Subsection **DD.**, of this Policy is hereby deleted in its entirety and replaced with the following:

**DD. "Loss"** means

1. A monetary judgment, award or settlement of compensatory damages arising from "bodily injury", "property damage" or "remediation costs", including associated "extra damages" and "legal defense expense";

2. "Emergency response costs" and associated "legal defense expense"

3. "Catastrophe management costs".

**II.** Section **VI.**, **EXCLUSIONS**, of this Policy is hereby amended by addition of the following:

**First-Party Remediation Costs and Interruption**

"First-party remediation costs", exclusive of "emergency response costs", along with any associated "legal defense expense" or "business interruption loss", arising out of or related to a "pollution condition" on, at, under or migrating from or onto, or an "indoor environmental condition" at, a "covered location".

**III.** ⊠ **Pre-Existing Conditions Endorsement Application**

Solely to the extent that there is an **X** indicated in this Section **III.**, above, the "insured" and the Insurer hereby agree that the modifications identified in Sections **I.** and **II.** of this Endorsement only apply to "pollution conditions" or "indoor environmental conditions" that first commence, in whole or in part, prior to **04/01/2009**.

**IV.** ⊠ **Location-Specific Endorsement Application**

Solely to the extent that there is an **X** indicated in this Section **IV.**, above, the "insured" and the Insurer hereby agree that the modifications identified in Sections **I.** and **II.** of this Endorsement only apply to "pollution conditions" or "indoor environmental conditions" associated with the "covered locations" specifically identified in the Schedule of Covered Locations, below:

### Schedule of Covered Locations

1. 1920 Leonard Ave., Columbus, OH 43219

2. 2004 Leonard Ave., Columbus, OH 43219

3. 940 Woodland Ave., Columbus, OH 43219

    **4.**      970 Woodland Ave., Columbus, OH 43219

    **5.**      1100 Woodland Ave., Columbus, OH 43219

**V.**  ☐  **Specific Conditions Endorsement Application**

Solely to the extent that there is an **X** indicated in this Section **V.**, above, the "insured" and the Insurer hereby agree that the modifications identified in Sections **I.** and **II.** of this Endorsement only apply to "pollution conditions" or "indoor environmental conditions" specifically identified below:

### Conditions

All other terms and conditions of this Policy remain unchanged.

_____
                   Authorized Representative

Frank 126-co-000-0012-EIA8 44/C Docs of the 1 Blodmo 02/06/25 02:40:33 11:30 PM 23 EV009618

## GLOBAL PROGRAM SOLUTIONS (INDEMNITY ONLY OUTSIDE OF THE UNITED STATES) ENDORSEMENT

| Named Insured | | | | Endorsement Number |
|---|---|---|---|---|
| Yenkin-Majestic Paint Corp. | | | | 005 |

| Policy Symbol | Policy Number | Policy Period | | Effective Date of Endorsement |
|---|---|---|---|---|
| PPL | G2488188A 003 | 04/01/2019 to 04/01/2022 | | 04/01/2019 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

I.  Section **IV., COVERAGE TERRITORY,** of this Policy is hereby deleted and replaced with the following:

**COVERAGE TERRITORY**

The coverage afforded pursuant to this Policy shall apply to "pollution conditions" or "indoor environmental conditions" located, and "claims" made, worldwide, except for the People's Republic of China.

Notwithstanding, this Policy shall not afford coverage for any risk which would otherwise be in violation of the laws of the United States of America, including, but not limited to, economic or trade sanction laws or export control laws administered by the United States Government.

## II. Insuring Agreement

This Endorsement applies only when a "foreign occurrence" arising out of one or more otherwise covered exposures of the "insured" or "foreign entity" cause injury or damage of a type covered pursuant to this Policy. In that case, rather than directly pay on behalf of the "insured" or "foreign entity", the Insurer shall indemnify the relevant "insured" for the "foreign loss" or "foreign entity loss" caused by a "foreign occurrence" in accordance with this Endorsement.

Nothing in this Endorsement is intended to, nor does it, extend coverage beyond the terms, conditions, exclusions and other limitations of this Policy.

## III. Who is an Insured

When this Endorsement applies, the general provisions of this Policy that document who is an "insured", including any other associated definitions or schedules, are hereby amended to confirm that "foreign entities" <u>are</u> <u>not</u> "<u>insured's</u>" pursuant to this Policy on whose behalf the Insurer has a direct duty to pay settlements or judgments or to whom the Insurer owes any duty to defend.

## IV. Defense and Supplementary Payments

When this Endorsement applies, rather than directly defend an "insured" or "foreign entity", the Insurer shall indemnify the relevant "insured" for defense costs incurred in defending a "claim" made or brought against it or its "foreign entity", provided that the "insured" complies with the additional conditions of Section **VIII.** of this Endorsement, below, and all other terms, conditions and limitations of this Policy.

## V. Limits of Insurance

The insurance provided by this Endorsement is subject to all applicable limits of insurance, limits of liability, deductibles and "self-insured retentions" (if any) identified in the Declarations of, or elsewhere in, this Policy, including any aggregate limits and sublimits (collectively "limits"). Any "foreign loss" or "foreign entity loss" for which the Insurer makes payment pursuant to this Endorsement shall erode and be counted against such limits. Such limits apply on the same basis (e.g., per pollution condition or indoor environmental condition)

with respect to the "insureds" as would apply if the "foreign occurrence" has taken place within the United States of America.

**VI.** Section **V., DEFINITIONS,** of this Policy is hereby amended by addition of the following:

> **"Biodiversity damages"** means injury to, damage sustained by, or the destruction or loss of, land, air, water, groundwater, drinking water, fish, wildlife, biota and their habitats.

> **"Foreign entity"** means:

> **1.** The persons or entities identified on the Schedule of Foreign Entities of this Endorsement, if any; and

> **2.** Any person or entity which would otherwise qualify as a "insured" as defined in or identified in a coverage part, policy form provision, endorsement or schedule attached to this Policy, but for the fact that such person or entity is domiciled or its principal place of business is located within a jurisdiction outside of the United States of America.

> **"Foreign entity loss"** means a "loss" for which a "foreign entity" is legally responsible for payment, and to which Coverages **A., B.** or **C.** of this Policy, or any Supplemental Coverages added to this Policy by endorsement, would otherwise apply if the relevant "insured" were directly liable for such amounts with respect to covered exposures located within the United States of America; provided that such "loss" has not otherwise been paid, indemnified or reimbursed pursuant to any other insurance.

> **"Foreign loss"** means a "loss" for which an "insured" is legally responsible for payment, and to which Coverages **A., B.** or **C.** of this Policy, or any Supplemental Coverages added to this Policy by endorsement, would otherwise apply if the relevant "insured" were directly liable for such amounts with respect to covered exposures located within the United States of America; provided that such "loss" has not otherwise been paid, indemnified or reimbursed pursuant to any other insurance.

> **"Foreign occurrence"** means a "pollution condition" or "indoor environmental condition" which may result in a "foreign loss" or "foreign entity loss".

**VII.** Section **V., DEFINITIONS,** Subsections **O., JJ.** and **MM.,** of this Policy are hereby deleted and replaced with the following:

> **O. "Environmental law"** means any international (including European Union), national, Federal, state, commonwealth, provincial, territorial, municipal or other local law, statute, ordinance, rule, guidance document, regulation, and all amendments thereto (collectively Laws), including voluntary cleanup or risk-based corrective action guidance, or the direction of an "environmental professional" acting pursuant to the authority provided by any such Laws, along with any governmental, judicial or administrative order or directive, governing the liability or responsibilities of the "insured" with respect to a "pollution condition" or "indoor environmental condition".

> **JJ. "Non-owned disposal site"** means:

> **1.** Any treatment, storage, transfer, disposal or recycling site or facility located within the United States of America or Canada that has not at any time been owned or operated, in whole or in part, by any "insured", which receives, or has historically received, a "named insured's" waste for disposal; provided that such treatment, storage, transfer, disposal or recycling site or facility:

> > **a.** Was properly permitted and licensed pursuant to "environmental law" to accept the "named insured's" waste at the time of such disposal by the Federal, state, commonwealth, provincial, territorial, municipal or other local government agencies or bodies with applicable jurisdiction;

b. Was not owned or operated by any person, corporation or unincorporated association that was in bankruptcy at the time the "named insured's" waste was received for disposal; and

c. Has not, prior to the time the "named insured's" waste was received for disposal, been identified on the United States EPA (CERCLA) National Priorities List or pursuant to any functional equivalent of that list made by Federal, state, commonwealth, provincial, territorial, municipal or other local government agency or body with applicable jurisdiction pursuant to "environmental law", or

2. Any treatment, storage, transfer, disposal or recycling site or facility specifically identified on a Schedule of Non-Owned Disposal Sites Endorsement attached to this Policy, if any.

**MM.** **"Property damage"** means:

1. Physical injury to, or destruction of, tangible property of a third-party, including all resulting loss of use of that property;

2. Loss of use of tangible property of a third-party, that is not physically injured or destroyed;

3. Diminished value of tangible property owned by a third-party;

4. "Natural resource damages"; or

5. With respect to "pollution conditions" located within the European Union, "biodiversity damages".

**"Property damage"** does not mean "remediation costs".

**VIII.** Section **IX., GENERAL CONDITIONS**, of this Policy is hereby amended by addition of the following:

**Claims Made and/or Reported Coverage (if applicable)**

Any requirements in this Policy that a "claim" be first made and/or reported, or deemed made and/or reported, during the "policy period", or any discovery or "extended reporting period", shall also apply to all "claims" made against a "foreign entity" for which an "insured" seeks indemnification. Any provisions regarding notice of circumstances which may become a "claim" pursuant to this Policy shall apply to circumstances known or which reasonably should have been known by the "insured".

**Additional Duties of the Relevant Insured**

1. With respect to a "foreign occurrence" which may result in a "claim" pursuant to this Endorsement, the relevant "insured" assumes the duty to notify the Insurer, and must notify the Insurer in accordance with the standards identified in the applicable coverage form, coverage part or endorsement of this Policy.

2. The relevant "insured" shall, when directed by the Insurer:

a. Retain in its own name, but at the Insurer's expense, a loss adjusting expert ("loss adjuster") that is authorized in the jurisdiction in which the "foreign loss" or "foreign entity loss" occurred and approved by the Insurer;

b. Where permitted by applicable law, grant the Insurer the full right to collaborate with such loss adjuster;

c. Grant the Insurer full access to any records produced by such loss adjuster; and

d. Obtain the right to control the investigation, adjustment, defense and settlement of the "foreign loss" or "foreign entity loss" using experts approved by the Insurer, including access to books, records, bills, invoices, vouchers and other information.

**Payment as Discharge of Liability**

With respect to any "foreign loss" or "foreign entity loss", payment to the relevant "insured" shall, to the extent of such payment and in all circumstances, discharge the Insurer from any liability or alleged liability to any other person or entity, whether or not such person or entity is named as an "insured" pursuant to this Policy.

**Truthfulness and Accuracy of Information**

When this Endorsement applies:

1. The relevant "insured" shall make a good faith effort to provide truthful and accurate information to the Insurer with respect to the applicable "foreign entity", "foreign occurrence", "claim", "foreign loss" or "foreign entity loss"; and

2. The relevant "insured" shall not, at any time, intentionally conceal or misrepresent facts concerning this Policy, including the risk to be insured; any "foreign entity"; any "foreign loss"; any "foreign entity loss"; any "claim"; or any "foreign occurrence".

<u>**Schedule of Foreign Entities**</u>

1. None

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

Franklin County Ohio Clerk of Courts of the Common Pleas- 2019 Dec 03 1:30 PM-23CV009622

# NON-OWNED/NON-OPERATED LOCATIONS COVERAGE (POLLUTION CONDITIONS ONLY) ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| Yenkin-Majestic Paint Corp. | 006 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPL | G2488188A 003 | 04/01/2019 to 04/01/2022 | 04/01/2019 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

**I.** Section **I. INSURING AGREEMENTS**, of this Policy is hereby amended by addition of the following:

**A.** SUPPLEMENTAL COVERAGE - NON-OWNED/NON-OPERATED LOCATIONS

"Claims" arising out of a "pollution condition" on, at, under or migrating from a "non-owned and non-operated location", provided the "claim" is first made during the "policy period". Any such "claim" must be reported to the Insurer, in writing, during the "policy period" or within thirty (30) days after the expiration of the "policy period", or during any applicable "extended reporting period".

The coverage afforded pursuant to this Supplemental Coverage only applies to "pollution conditions" that first commence, in their entirety, on or after the retroactive date identified in the Non-Owned/Non-Operated Locations Coverage (Pollution Conditions Only) Endorsement, and prior to the expiration of the "policy period".

**II.** Solely with respect to the coverage afforded pursuant to this Supplemental Coverage, the following additional provisions apply:

### Limits of Liability and Self-Insured Retention

**Per Non-Owned/Operated Condition Sublimit of Liability: $**5,000,000

**Aggregate Non-Owned/Operated Conditions Sublimit of Liability: $**5,000,000

The amount that the Insurer shall pay pursuant to this Policy for "loss" for coverage afforded pursuant to this Endorsement shall be subject to the Per Non-Owned/Operated Condition Sublimit of Liability and Aggregate Non-Owned/Operated Conditions Sublimit of Liability identified above. Therefore, the Per Non-Owned/Operated Condition Sublimit of Liability, above, shall be the maximum amount the Insurer shall pay for all "loss" arising out of or related to the same, continuous, repeated, or related "pollution condition" on, at, under or migrating from a "non-owned and non-operated location" (hereinafter Non-Owned/Operated Condition) to which this insurance applies. Moreover, the Aggregate Non-Owned/Operated Conditions Sublimit of Liability, above, shall be the maximum amount the Insurer shall pay for all "loss" arising out of or related to all Non-Owned/Operated Conditions to which this insurance applies. These Sublimits of Liability are subject to, and payments made within these Sublimits of Liability shall erode, the Limits of Liability identified in Item **3.** of the Declarations to this Policy, along with any other applicable exposure-specific Limits or Sublimits of Liability added by endorsement hereto. Under no circumstance shall the Insurer be liable to pay any amount in excess of any applicable Limit or Sublimit of Liability.

**Per Non-Owned/Operated Condition Self-insured Retention: $** 100,000

Notwithstanding anything identified in Item **4.** of the Declarations to this Policy that might be construed to the contrary, the Per Non-Owned/Operated Condition Self-Insured Retention, above, shall be the "self-insured retention" applicable to any coverage provided pursuant to this Policy for each Non-Owned/Operated Condition to which this insurance applies.

III. Solely with respect to coverage afforded pursuant to this Endorsement, Section **V., DEFINITIONS**, Subsection **DD.**, of this Policy is hereby deleted in its entirety and replaced with the following:

**DD. "Loss"** means a monetary judgment, award or settlement of compensatory damages arising from "bodily injury", "property damage" or "remediation costs", including associated "extra damages" and "legal defense expense".

IV. Section **V., DEFINITIONS** of this Policy is hereby amended by addition of the following:

**"Non-owned and non-operated location"** means locations identified in the Schedule of Non-Owned and Non-Operated Locations on the Non-Owned/Non-Operated Locations Coverage (Pollution Conditions Only) Endorsement attached to this Policy.

V. Section **VI., EXCLUSIONS**, of this Policy is hereby amended by addition of the following:

**First-Party Remediation Costs**

"First-party remediation costs", "emergency response costs", "catastrophe management costs", "business interruption loss", along with any associated "legal defense expense", arising out of or related to "pollution conditions" on, at under or migrating from a "non-owned and non-operated locations".

### Schedule of Non-Owned And Non-Operated Locations

| | Location | Retro Date |
|---|---|---|
| 1 | Sherwin Williams, 6795 S. Main St., MFG "B" Dock, Morrow, GA 30260 | 04/01/2009 |
| 2 | Sherwin Williams, 1025 Howard Street, Greensboro, NC 27420 | 04/01/2009 |
| 3 | Sherwin Williams, 23600 Fargo Avenue, Bedford Heights, OH 44146 | 04/01/2009 |
| 4 | Sherwin Williams, 636 East 40 Street, Holland, MI 49423 | 04/01/2009 |
| 5 | SI Group - Canada, 319 Comstock Road, Toronto, Canada | 04/01/2009 |
| 6 | MVP, 101 Prospect Street, High Point, NC 27261 | 04/01/2009 |
| 7 | Rose Distribution, 8640 Jefferson Hwy, Osseo, MN 55369 | 04/01/2009 |
| 8 | Sherwin Williams, 2325 Hollins Ferry, Baltimore, MD 21230 | 04/01/2009 |
| 9 | Sherwin Williams, 2121 New World Drive, Columbus, OH 43207 | 04/01/2009 |
| 10 | Sherwin Williams, 301 W. Plant Road, Ennis, TX 75119 | 04/01/2009 |
| 11 | PPG Industries, 400 South 13th Street, Louisville, KY 40203 | 04/01/2009 |
| 12 | Fulton Warehouse, 266 Villanova Drive SW, Atlanta, GA 30336 | 04/01/2009 |
| 13 | International Distribution, 14335 S.W. 119th Avenue, Miami, FL | 04/01/2009 |
| 14 | Rinchem Co, 8510 Ambassador Hwy, Dallas, TX 75207 | 04/01/2009 |
| 15 | 3680 NW 73rd St., Miami, FL 33147 | 04/01/2014 |
| 16 | 4143 Singleton Blvd., Dallas, TX | 04/01/2014 |
| 17 | Furniture City Warehouse, 2325 E. Kivett Dr., High Point, NC 27260 | 04/01/2014 |
| 18 | American Warehouses, 1918 Collingsworth St., Houston, TX 77009 | 04/01/2014 |

| 19 | Andicor Specialty Chemicals Dominion Warehouse, 1296 Martin Grove Road, Toronto, Canada M9W 4X3 | 04/01/2014 |
| 20 | Sherwin Williams, 630 E. 13th St. Park, Andover, KS 67002 | 04/01/2014 |
| 21 | Sherwin Williams, #14 Industrial Park, Flora, IL 62839 | 04/01/2014 |
| 22 | Sherwin Williams, 224 Catherine St., Ft. Erie, Ontario, L2A 5M9 | 04/01/2014 |
| 23 | Sherwin Williams, 2802 W. Miller Rd., Garland, TX 75041 | 04/01/2014 |
| 24 | Sherwin Williams, 404 East Mallory, Memphis, TN 38109 | 04/01/2014 |
| 25 | Sherwin Williams, 113 Stage Coach Trail, Greensboro, NC 27409 | 04/01/2014 |
| 26 | Sherwin Williams, 12401 Industrial Blvd., Victorville, CA 92395 | 04/01/2014 |
| 27 | PPG Industrial, 300 Sprowl Rd., Huron, OH 44839 | 04/01/2014 |
| 28 | Ceramic, 325 Highway 81, Osseo, MN 55369 | 04/01/2019 |
| 29 | Andicor Specialty Chemicals, Adli Group, 5901 Torken Rd., Mississauga, Ontario L4W4K3 | 02/22/2016 |

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

# NOTICE OF CANCELLATION AMENDATORY (GENERIC TIME FRAME) ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| Yenkin-Majestic Paint Corp. | 007 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPL | G2488188A 003 | 04/01/2019 to 04/01/2022 | 04/01/2019 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Section **IX.**, **GENERAL CONDITIONS**, Subsection **A.**, **Cancellation**, Paragraph **2.**, of this Policy is hereby deleted in its entirety and replaced with the following:

**2.** This Policy may be cancelled by the Insurer for the following reasons:

**a.** Non-payment of premium; or

**b.** Fraud or material misrepresentation on the part of any "insured",

by mailing to the "first named insured" at the "first named insured's" last known address, written notice stating when, not less than **ninety** (**90**) days thereafter, fifteen (15) days if cancellation is for non-payment of any unpaid portion of the premium, such cancellation shall be effective. The mailing of notice shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall be the end of the "policy period".

Subparagraph **2.b.**, herein, shall apply only to that "insured" that engages in the fraud or misrepresentation. This exception shall not apply to any "insured" who is a parent corporation, subsidiary, employer of, or otherwise affiliated by ownership with, such "insured".

All other terms and conditions of the Policy remain unchanged.

_____
Authorized Representative

Frank Inc. County Clerk of Court ...Clerk of the Circuit Court 02/06/25 2240 Pe-43 of 60 FM-23EVD09962

# OTHER INSURANCE (PRIMARY) ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| Yenkin-Majestic Paint Corp. | 008 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPL | G2488188A 003 | 04/01/2019 to 04/01/2022 | 04/01/2019 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Section **IX.**, **GENERAL CONDITIONS**, Subsection **H.**, **Other Insurance**, of this Policy is hereby deleted in its entirety and replaced with the following:

**H. Other Insurance**

If other valid and collectible insurance is available to the "insured" covering any exposure also covered by this Policy, the insurance afforded by this Policy shall apply as primary insurance.

All other terms and conditions of this Policy remain unchanged.

_____

Authorized Representative

PF-44963 (09/14)                                                                                   Page 1 of 1

# PREMIUM EARN-OUT (STAGGERED – ONE YEAR – ACCELERATION) ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| Yenkin-Majestic Paint Corp. | 009 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPL | G2488188A 003 | 04/01/2019 to 04/01/2022 | 04/01/2019 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Section **IX., GENERAL CONDITIONS,** Subsection **A., Cancellation,** Paragraph **3.,** of this Policy is hereby deleted in its entirety and replaced with the following:

**3.** <u>Premium Earn-Out</u>

**a.** Subject to Subparagraph **b.,** below, in the event of cancellation, **twenty-five** percent (**25** %) of the premium identified in Item **6.** of the Declarations shall be minimum earned upon the inception date identified in Item **2.** of the Declarations. Thereafter, the remaining premium shall be deemed earned by the Insurer on a *pro rata* basis over the first year of the "policy period".

**b.** In the event a "claim" is first made against an "insured", or a "pollution condition" or "indoor environmental condition" is first discovered by an "insured", during the "policy period", to which this insurance may apply, in whole or in part, the premium identified in Item **6.** of the Declarations shall be immediately deemed one hundred percent (100%) earned upon such event.

Subject to the foregoing, any unearned premium amounts due the "first named insured", if any, shall be refunded within thirty (30) days of the effective date of cancellation.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

Case: 1:26-cv-00112 Clerk of Courts of the Common Pleas 2024 Dec 13 11 30 PM-23CV009628

# SCHEDULE OF COVERED LOCATIONS ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| Yenkin-Majestic Paint Corp. | 010 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPL | G2488188A 003 | 04/01/2019  to  04/01/2022 | 04/01/2019 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

The locations identified in the Schedule of Covered Locations, below, are hereby added to this Policy as additional "covered locations".

### SCHEDULE OF COVERED LOCATIONS

| | *Location* | *Retroactive Date* |
|---|---|---|
| 1. | 1920 Leonard Ave., Columbus, OH 43219 | FULL RETRO |
| 2. | 2004 Leonard Ave., Columbus, OH 43219 | FULL RETRO |
| 3. | 940 Woodland Ave., Columbus, OH 43219 | FULL RETRO |
| 4. | 970 Woodland Ave., Columbus, OH 43219 | FULL RETRO |
| 5. | 1100 Woodland Ave., Columbus, OH 43219 | FULL RETRO |
| 6. | 601-15 South Front Street, Yakima, WA 98901 | 04/01/2019 |

If a "covered location", above, is identified with a corresponding Retroactive Date, then that date shall supersede the general Retroactive Date identified for premises coverage afforded pursuant to Coverage **A.** within Item **5.** of the Declarations to this Policy for "pollution conditions" on, at under or migrating from, or "indoor environmental conditions" at, that specific "covered location".  Also, if a "covered location", above, is identified with the phrase **"FULL RETRO"**, then full retroactive coverage is afforded pursuant to this Policy for "pollution conditions" on, at under or migrating from, or "indoor environmental conditions" at, that specific "covered location".  Notwithstanding the foregoing, any retroactive coverage indicated herein is subject to any other exposure-specific Retroactive Date added to this Policy by endorsement.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

## SCHEDULE OF DISCLOSED CONDITIONS ENDORSEMENT

| Named Insured<br>Yenkin-Majestic Paint Corp. | | | Endorsement Number<br>011 |
|---|---|---|---|
| Policy Symbol<br>PPL | Policy Number<br>G2488188A 003 | Policy Period<br>04/01/2019  to  04/01/2022 | Effective Date of Endorsement<br>04/01/2019 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree that the "pollution conditions" and "indoor environmental conditions" specifically identified or described, or identified or described in documents listed, in the Schedule of Disclosed Conditions, below, have been affirmatively disclosed to the Insurer prior to the inception of this Policy.

### SCHEDULE OF DISCLOSED CONDITIONS

1. Limited Phase II Assessment, Joyce Avenue Former Railroad Right-of-Way, dated July 30, 2008, prepared by Foust Engineering, Inc.

2. Phase I Environmental Site Assessment, 13.996-acre Former Railroad Right-of-Way Joyce Avenue to beyond Fifth Avenue Columbus, Ohio 43219, dated May 30, 2008, prepared by Foust Engineering, Inc.

3. Spill Prevention Control and Countermeasures Plan & Stormwater Pollution Prevention Plan, January 2014

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

# SCHEDULE OF NON-OWNED DISPOSAL SITES ENDORSEMENT

| Named Insured<br>Yenkin-Majestic Paint Corp. | | | Endorsement Number<br>012 |
|---|---|---|---|
| Policy Symbol<br>PPL | Policy Number<br>G2488188A 003 | Policy Period<br>04/01/2019 to 04/01/2022 | Effective Date of Endorsement<br>04/01/2019 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree that the following disposal sites and/or recycling facilities are identified on this Schedule of Non-Owned Disposal Sites Endorsement:

### SCHEDULE OF NON-OWNED DISPOSAL SITES

| | *Location* | *Retroactive Date* |
|---|---|---|
| 1. | Clean Waters Ltd. (formerly Permafix of Dayton) 300 Cherokee Drive, Dayton, OH 45427 | FULL RETRO |
| 2. | Veolia ES Technical Solutions, LLC (Formerly Onyx Environmental) 4201 Infirmary Drive, West Carrollton, OH 45449 | FULL RETRO |
| 3. | Rineco, 1007 Vulcan Road, Benton AR | FULL RETRO |
| 4. | Green America (Ashland) 10107 Highway 79, Hannibal, MO 63401 | FULL RETRO |
| 5. | Petro Chem Processing, 421 Lycos, Detroit, MI | FULL RETRO |
| 6. | Pollution Control Industries (VWR) / Tradebe / Tradebe (Patriot), 4343 Kennedy Ave, East Chicago, IL 46312 | FULL RETRO |
| 7. | Giant Resource Recovery, 755 Industrial Rd., Sumter, SC | FULL RETRO |
| 8. | EQ Resource Recovery, 36345 Van Born Road, Romulus, MI 48174 | FULL RETRO |
| 9. | CWM Resource Management, Inc. 5371 Cook Rd, Morrow, GA 30260 | FULL RETRO |
| 10. | Northeast Chemical Corp. 3301 Monroe Ave. Cleveland, OH 44113 | FULL RETRO |
| 11. | Allworth of Tennessee, Inc. 101 South Park Ave. Mt. Pleasant, TN 38474 | FULL RETRO |
| 12. | River Cement, Highway 61 South, Festus, MO 63028 | FULL RETRO |
| 13. | Waste Technologies Industries (Von Roll America) / Heritage Environmental, 1250 St. George St. East Liverpool, OH 43920 | FULL RETRO |
| 14. | Onyx Environmental Services, LLC , W 124 N9451 Boundary Rd., Menomonee Falls, WI 53051 | FULL RETRO |
| 15. | Onyx Environmental Services, LLC , 1 Eden Lane, Flanders, NJ | FULL RETRO |
| 16. | Chemical Conservation of Georgia, 1612 James P. Rogers Circle, Valdosta, GA | FULL RETRO |
| 17. | Safety Kleen Corp. 3700 LaGrange Rd., Smithfield, KY 40068 | FULL RETRO |

| | | |
|---|---|---|
| **18.** | Safety Kleen Corp. 1722 Cooper Creek Rd. Denton, TX 76208 | FULL RETRO |
| **19.** | Systech Environmental Corp. 11379 County Rd. Paulding, OH 45879 | FULL RETRO |
| **20.** | Reclaimed Energy Co. Inc. 1300 Western Ave. Connersville, IN 47331 | FULL RETRO |
| **21.** | Lonestar Alternative Fuels (CK) / Buzzi USA (Enviro Alliance Group), 3301 S. County Rd. 150 W, Greencastle, IN 46153 | FULL RETRO |
| **22.** | Suburban Recycling & Disposal Facility (Non-Haz Mat Landfill) 3415 Township Rd. 447, Glenford, OH 43739 | FULL RETRO |
| **23.** | Franklin County Landfill – SWACO (Capitol Waste) 3851 London-Groveport Rd. Grove City, OH 43123 | FULL RETRO |
| **24.** | Valicor Environmental Services (Enviro Alliance Group) 11807 Reading Road, Cincinnati, OH 45241 | FULL RETRO |
| **25.** | Pine Grove Landfill (Republic Services & Nexeo) 5131 Drinkle Rd. SW, Amanda, Oh 43102 | FULL RETRO |
| **26.** | Chemtron Corporation, 35820 Schneider Ct. Avon, OH 44011 | FULL RETRO |
| **27.** | Clean Harbors, 4879 Spring Grove Avenue, Cincinnati, OH 45232 | FULL RETRO |
| **28.** | Clean Harbors, 581 Miliken Drive, Hebron, OH 43025 | FULL RETRO |
| **29.** | American Environmental Services (Enviro Alliance Group) 1689 Shar-Cal Road, Calvert City, KY 42029 | FULL RETRO |
| **30.** | Giant Resource Recovery, GRR 755 Industrial Road Sumter, SC 29151 | FULL RETRO |
| **31.** | Metal Working Lubricants (Enviro Alliance Group) 1509 S. Senate Ave. Indianapolis, IN 46225 | FULL RETRO |
| **32.** | Enviro Solids (Enviro Alliance Group) 6011 Wyoming Avenue, Dearborn, MI 48126 | FULL RETRO |
| **33.** | PSC, 515 Lycaste St. Detroit, MI 48214 | FULL RETRO |
| **34.** | Environmental Enterprises, Inc. 4650 Spring Grove Avenue, Cincinnati, OH 45232 | FULL RETRO |
| **35.** | Advanced Waste Services, 101 River Park Drive New Castle, PA 16101 | FULL RETRO |
| **36.** | Lighting Resources, LLC 498 Park 800 Drive, Greenwood, IN 46143 | FULL RETRO |
| **37.** | 515 Industrial Boulevard Wooster, Ohio | FULL RETRO |
| **38.** | TIER, 7013 Krick Road, Bedford, OH 44146 | 02/22/2016 |
| **39.** | DART, 4132 Pompano Rd, Charlotte, NC 28126 | 02/22/2016 |
| **40.** | Central Ohio Oil/Mid States Environmental, 809 Marion Road, Columbus, OH 43207 | FULL RETRO |
| **41.** | Weavertown Transfer Facility, 3866 Millers Run Road McDonald, PA 15057 | FULL RETRO |
| **42.** | Fielding Environmental, 3549 Mavis Road, Mississauga, Ontario, Canada L5C 1T7 | FULL RETRO |
| **43.** | US Ecology, 6520 Georgia Street, Detroit, MI 48211 | 03/12/2018 |

Frank Co unty Ohio Clerk of Courts of the Common Pleas 2024 Dec 31 30 PM 23EV009632

**44.**    Bear Environmental, 160 N. Wall St., Suite 206          04/01/2019
           Columbus, OH 43215

If a "non-owned disposal site", above, is identified with a corresponding Retroactive Date, then that date shall supersede the general Retroactive Date identified for non-owned disposal sites liability coverage afforded pursuant to Coverage **C.** within Item **5.** of the Declarations to this Policy for "pollution conditions" on, at, under or migrating from that specific "non-owned disposal site". Also, if a "non-owned disposal site", above, is identified with the phrase **"FULL RETRO"**, then full retroactive coverage is afforded pursuant to this Policy for "pollution conditions" on, at under or migrating from that specific "non-owned disposal site". Notwithstanding the foregoing, any retroactive coverage indicated herein is subject to any other exposure-specific Retroactive Date added to this Policy by endorsement.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

Franklin County Ohio Clerk of Courts of the Common Pleas- 2024 Dec 31 10:30 AM-23EV009623

# SPECIFIC ACTIVITIES EXCLUSIONARY ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| Yenkin-Majestic Paint Corp. | 013 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPL | G2488188A 003 | 04/01/2019 to 04/01/2022 | 04/01/2019 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

<u>Solely to the extent that there is an **X** indicated in Sections **I.** and/or **II.** of this Endorsement, below</u>, the "insured" and the Insurer hereby agree to the following changes to this Policy:

**I.** [X] Section **VI.**, **EXCLUSIONS**, of this Policy is hereby amended by addition of the following:

**Specific Activities (Broad)**

"Loss" arising out of or related to: the excavation, extraction, treatment, transportation, or disposal of soil or groundwater during development or improvement activities at a "covered location", which would not otherwise be actionable pursuant to "environmental laws" but for such site development or improvement activities. However this exclusion shall not apply to site development or improvement activities that are mandated by a governmental agency, or to activities that are necessary to address actionable conditions discovered during the course of development or improvement activities, if such activities would be mandated by a governmental agency at the "covered location" prior to such development or improvement activities.

**II.** [ ] Section **VI.**, **EXCLUSIONS**, of this Policy is hereby amended by addition of the following:

**Specific Activities (Give-Back)**

"Loss" arising out of or related to:

This exclusion shall not apply to monetary judgments, awards or settlements of compensatory damages for "bodily injury" or "property damage", including any associated "extra damages" or "legal defense expense".

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

Franklin County Ohio Clerk of Courts of the Common Pleas- 2024 Dec 03 1:30 PM-23EV009634

# TRANSPORTATION AMENDATORY (BEYOND BOUNDARIES GENERALLY) ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| Yenkin-Majestic Paint Corp. | 014 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPL | G2488188A 003 | 04/01/2019 to 04/01/2022 | 04/01/2019 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Section **V.**, **DEFINITIONS**, Subsection **TT.** of this Policy is hereby deleted in its entirety and replaced by the following:

**TT. "Transportation"** means the movement of an "insured's" waste, materials, goods or products by automobile, aircraft, watercraft, railcar or other conveyance, including any associated loading or unloading thereof, by an "insured", or any third-party vendor engaged by an "insured" in the business of transporting property for hire, provided that any such movement, and associated loading and unloading activities, are performed beyond the boundaries of a "covered location".

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

# SERVICE OF SUIT ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| Yenkin-Majestic Paint Corp. | 015 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPL | G2488188A 003 | 04/01/2019 to 04/01/2022 | 04/01/2019 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Information about service of suits upon the company is given below. Service of process of suits against the company may be made upon the following person, or another person the company may designate:

> Mr. Paul Bech, Esq., Assistant General Counsel
> Chubb
> 436 Walnut Street
> Philadelphia, PA 19106-3703

The person named above is authorized and directed to accept service of process on the company's behalf in any action, suit or proceeding instituted against the company. If the insured requests, the company will give the insured a written promise that a general appearance will be entered on the company's behalf if a suit is brought.

If the insured requests, the company will submit to the jurisdiction of any court of competent jurisdiction. The company will accept the final decision of that court or any Appellate Court in the event of an appeal. However, nothing in this endorsement constitutes a waiver of the company's right to: remove an action to a United States District Court, seek a transfer of a case to another court, or to enforce policy provisions governing choice of law or venue selection, as may be permitted by the laws of the United States, or of any state in the United States.

The law of some jurisdictions of the United States of America requires that the Superintendent, Commissioner or Director of Insurance (or their successor in office) be designated as the company's agent for service of process. In these jurisdictions, the company designates the Director of Insurance as the company's true and lawful attorney upon whom service of process on the company's behalf may be made. The company also authorizes the Director of Insurance to mail process received on the company's behalf to the company person named above.

If the insured is a resident of Canada, the insured may also serve suit upon the company by serving the government official designated by the law of the insured's province.

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

_____
Authorized Representative

Franklin County Ohio Clerk of Courts of the Common Pleas- 2024 Dec 31 1:30 PM-23CV009626
CR-2026-1003-EH3-KA Doc-#- 5 Filed 02/06/25 Page 54 of 60 FRA-23-1-009626

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| Yenkin-Majestic Paint Corp. | 016 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPL | G2488188A 003 | 04/01/2019 to 04/01/2022 | 04/01/2019 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims. All other terms and conditions of the policy remain unchanged.

_____
Authorized Representative

ALL-21101 (11/06) Ptd. in U.S.A.                                      Page 1 of 1

# SIGNATURES

| Named Insured | Endorsement Number |
|---|---|
| Yenkin-Majestic Paint Corp. | 017 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPL | G2488188A 003 | 04/01/2019 to 04/01/2022 | 04/01/2019 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**ILLINOIS UNION INSURANCE COMPANY** (A stock company)
525 W. Monroe Street, Suite 400, Chicago, Illinois 60661

**WESTCHESTER SURPLUS LINES INSURANCE COMPANY** (A stock company)
Royal Centre Two, 11575 Great Oaks Way, Suite 200, Alpharetta, GA 30022

REBECCA L. COLLINS, Secretary

JOHN J. LUPICA, President
Authorized Representative

Chubb. Insured.™

LD-5S23j (03/14)                                                                 Page 1 of 1

**CHUBB**®

☒ Illinois Union Insurance  Company

☐ Westchester Surplus Lines Insurance Company

☐ -

Insured:
Yenkin-Majestic Paint Corp.

Attached To Policy No.  PPL G2488188A 003

Effective Date  04/01/2019

---

### OHIO SURPLUS LINES NOTIFICATION

# THE INSURANCE HEREBY EVIDENCED IS WRITTEN BY AN APPROVED NON-LICENSED INSURER IN THE STATE OF OHIO AND IS NOT COVERED IN CASE OF INSOLVENCY BY THE OHIO INSURANCE GUARANTY ASSOCIATION.

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS NOTICE IS ATTACHED OTHER THAN AS STATED ABOVE.

# CHUBB®

| Illinois Union Insurance Company |
| :---: |
| Insurance Company |
| Yenkin-Majestic Paint Corp. |
| Policyholder |
| PPL G2488188A 003 |
| Policy Number |
| Hylant Group Inc. |
| Broker/Producer |

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE

You were notified that under the Terrorism Risk Insurance Act, as amended, you have a right to purchase insurance coverage for losses resulting from acts of terrorism. *As defined in Section 102(1) of the Act*: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury---in consultation with the Secretary of Homeland Security, and the Attorney General of the United States---to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY YOUR POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% FOR YEAR 2015, 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017, 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019 AND 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM THAT WOULD BE CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.**

**YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.**

You elected *NOT* to purchase terrorism coverage under the Act at the price indicated. ACCORDINGLY, WE WILL *NOT* PROVIDE THIS COVERAGE AND YOU DO NOT OWE THE ADDITIONAL PREMIUM FOR THAT COVERAGE INDICATED BELOW.

> Terrorism coverage described by the Act under your policy was made available to you for additional premium in the amount of $**3,679**, however you elected to decline such coverage.

# POLICYHOLDER NOTICE – OHIO

**WARNING:** Any person who, with intent to defraud or knowing that he/she is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

0H125 - A80



**Chubb Producer Compensation
Practices & Policies**

Chubb believes that policyholders should have access to information about Chubb's practices and policies related to the payment of compensation to brokers and independent agents. You can obtain that information by accessing our website at http://www.chubbproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.

Case 3:26-cv-00112-CHB-HAB Document 13 Filed 02/06/25 Page 60 of 60 FAZEV009642

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")
## ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.